CASE 14-C-44            GREENBRIER                          PAGE 0001

GREENBRIER HOTEL CORPORATION,  VS. LEXINGTON INSURANCE COMPANY, A


LINE   DATE   ACTION

```
 1 03/14/14   COMPLAINT FILED - SUMMONS ISSUED
 2 03/14/14   SUMMONS AND COMPLAINT GIVEN TO ATTY FOR SERVICE
 3 03/21/14   DEPOSIT - MARVIN MASTERS $155.00
 4 03/24/14   SEC. OF STATE ACCPT. SERVICE FOR ALLIED WORLD ASSURANCE - FILED
 5 03/24/14   SEC. OF STATE ACCPT. SERVICE FOR XL INSURNACE AMERICA, INC. -
 6           FILED
 7 03/24/14   SEC. OF STATE ACCPT. SERVICE FOR ACE AMERICAN INS. - FILED
 8 03/24/14   SEC. OF STATE ACCPT. SERVICE FOR LEXINGTON INS. CO. - FILED
 9 04/16/14   AMENDED COMPLAINT FILED - SUMMONS ISSUED
10 04/16/14   SUMMONS AND COMPLAINT GIVEN TO ATTY FOR SERVICE
```



## IN THE CIRCUIT COURT OF GREENBRIER COUNTY, WEST VIRGINIA

GREENBRIER HOTEL CORPORATION,
a West Virginia corporation; THE
GREENBRIER SPORTING CLUB, INC., a
West Virginia corporation; and THE
GREENBRIER SPORTING CLUB
DEVELOPMENT COMPANY, INC, a
Delaware corporation,

    Plaintiffs,

v.

LEXINGTON INSURANCE COMPANY, a
Massachusetts corporation; XL INSURANCE
AMERICA, INC., a Delaware corporation;
ACE AMERICAN INSURANCE
COMPANY, a Pennsylvania corporation;
ALLIED WORLD ASSURANCE
COMPANY HOLDINGS, AG, a foreign
corporation; ALLIED WORLD
ASSURANCE COMPANY, LTD, a
foreign corporation; ALLIED WORLD
ASSURANCE COMPANY (U.S.) INC.,
a Delaware corporation; and THE
UNDERWRITERS AT LLOYD'S
LONDON, a foreign corporation,

    Defendants.

The Hon. J C Pomponio

Civil Action No. 14-C- 44

**Jury Trial Demanded**

## COMPLAINT

The plaintiffs above-named bring this action against the defendants for breach of an insurance contract, as more fully stated hereinafter. The plaintiffs also request declaratory relief pursuant to the West Virginia Declaratory Judgments Act, W.Va. Code §55-13-1 *et. seq.*, a jury trial of all claims, and pursuant to Rule 57, W.Va.R.Civ.P., plaintiffs request that the Court grant

[L0573065 1 ]

a speedy hearing and advance the matter on the Court's calendar.  Plaintiffs also assert claims for unfair and unlawful claims handling, all as more fully detailed hereinbelow.

1.    The plaintiffs are:

(a)    Greenbrier Hotel Corporation, which owns and operates an historic, world-renowned resort hotel located in Greenbrier County, West Virginia (the "Greenbrier"). The Greenbrier is a member of the Resort Hotel Association;

(b)    The Greenbrier Sporting Club, Inc., a West Virginia corporation, and The Greenbrier Sporting Club Development Company, Inc., a Delaware corporation, own and/or operate a recreational hunting, fishing and sporting club located in proximity to the Greenbrier; and

(c)    All of the plaintiffs are referred to collectively as "plaintiffs".

2.    Among other things, the Greenbrier owns and operates several world class golf courses, which, since 2011, have been the site of a Professional Golf Association Tour golf tournament known as the Greenbrier Classic.

3.    The defendants are Lexington Insurance Company, a Massachusetts corporation ("Lexington"); XL Insurance America, Inc., a Delaware corporation ("XL Insurance"); Ace American Insurance Company, a Pennsylvania corporation ("Ace American"); Allied World Assurance Company Holdings, AG, a Switzerland corporation; Allied World Assurance Company, Ltd, a Bermuda corporation; and Allied World Assurance Company (U.S.) Inc., a Delaware corporation (collectively referred to as "Allied World"); and The Underwriters at Lloyd's London, a British corporation ("the Underwriters").  Each of the defendants is an "insurer" within the meaning of W.Va. Code §33-1-2.  As such, the defendants all engage in the

business of underwriting and issuing policies of insurance, including policies affording property insurance.

4.      On or about June 29, 2012, within a few days before the start of the 2012 Greenbrier Classic, a severe weather event described as a derecho and identified as "Cat. No. 83" with extremely high winds impacted a large part of the United States, including West Virginia and the Greenbrier and the Sporting Clubs.

5.      As a direct and proximate result of Cat. No. 83, widespread and severe physical damage was sustained by and to the property of the plaintiffs, the resort, the hotel, the Sporting Clubs' facilities and associated property, including but not limited to the real property, fixtures, trees and shrubbery, growing plants, golf courses, the grounds, buildings and out-buildings, landscaping, roads and roadways, trails, ponds, streams, bridges, and other environs and improvements located thereupon.

6.      In addition to the physical damages as aforesaid, the Greenbrier and the Sporting Clubs suffered a loss of electrical power, which, although ultimately restored, resulted in an interruption of all normal and ordinary business activities.

7.      As a further direct and proximate result of Cat. No. 83, the plaintiffs suffered an economic and financial loss due to the necessary interruption of its business, including but not limited to a period of interruption preceding the Greenbrier Classic. The loss resulting therefrom occurred not only during the period preceding the Greenbrier Classic, but also continued thereafter for an extended period of time.  The business interruption and the ensuing loss associated therewith was a direct and proximate result of the effects of Cat. No. 83.

8.      The loss described hereinabove included, but was not limited to:

    (a)    A loss of profit which the plaintiffs were prevented from earning due to the interruption of its normal business; and

    (b)    Charges and expenses which necessarily continued despite the interruption of their businesses.

9.    As further direct and proximate result of Cat. No. 83, the plaintiffs were forced to incur extra expenses, meaning business expenses that would not normally have been incurred during the same time period, but were incurred because of the damage and interruption caused by Cat. No. 83.

10.    In addition to the damages and losses as aforesaid, the plaintiffs also expended substantial sums in an effort to reduce the amount of the losses resulting from Cat. No. 83, including but not limited to the following:

    (a)    Advertising expenses designed to mitigate the loss of revenue and profit caused by Cat. No. 83;

    (b)    Salaries, wages and fringe benefits that were necessarily paid to employees assigned to prepare and implement strategies to mitigate and offset the losses of revenue and profit caused by Cat. No. 83; and

    (c)    The cost of other promotional activities designed to mitigate and offset the losses caused by Cat. No. 83 and the ensuing damage and interruption of business.

11.    The Greenbrier is an "insured" under policies of property insurance issued by the defendants and each of them to the plaintiffs and any subsidiary, affiliated, associated or allied company, firm, organization of the plaintiffs as members and beneficiaries of the Resort Hotel Association (hereinafter referred to as the "Policy"). The "Named Insured" provision of the

aforesaid Policy includes as insured members of the Resort Hotel Association, such as The Greenbrier Hotel Corporation, and:

> ...any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, and the Insured's interest in partnerships and/or joint ventures, and/or any owned (wholly or partially) or controlled company(ies) where the Insured maintains an interest as now or hereinafter constituted or acquired; and any other party or interest for which the Insured has assumed the responsibility of purchasing insurance and Resort/Hotel Owners and other interested parties are endorsed herein as their interest may appear.

*See,* Policy, ¶1. This action is brought for and on behalf of all of the above-described insureds, whether or not they are named herein as a plaintiff.

12.     The Policy covers a period from February 28, 2012 through March 8, 2013, and was in full force and effect when Cat. No. 83 occurred on June 29, 2012. A true and correct copy of the Policy provided to plaintiffs as being the true Policy, that being the copy issued by Lexington, is attached hereto as Exhibit "A." XL Insurance, Ace American, Allied World and the Underwriters issued identical policies, or following form policies that incorporate the provisions of Exhibit "A" and are bound to the terms and provisions the same as Lexington.

13.     The Policy provides property insurance coverage for loss due to direct physical loss or damage to covered property, which includes the Greenbrier and the Sporting Clubs' facilities, its real estate, golf courses, grounds, buildings, out-buildings, landscaping, roads, roadways, trails, ponds, streams, and all of its environs and improvements located thereon.

14.     A weather event, such as Cat. No. 83, and the ensuing loss and damage resulting therefrom, is a peril covered by the Policy.

15.     The Policy provides coverage for "Business Interruption" which means financial or economic loss "...due to the necessary interruption of business conducted by the Insured...." *See,* Policy, ¶12.

{L0573065 1 }                                    5

16.    The Policy provides coverage for "Extra Expense" which is defined and described in the Policy to mean "The excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the insured's business, over and above the total cost(s) that would have normally have (sic) been incurred to conduct the business during the same period had no loss or damage [due to a covered peril] occurred...." *See,* Policy, ¶13.

17.    The Policy provides coverage for "Expense To Reduce Loss" which includes "...expenses as are necessarily incurred for the purpose of reducing any loss under this policy." *See,* Policy, ¶14.  The Policy also provides coverage for "Loss Adjustment Expenses" which includes "...expenses incurred by the Insured for preparing and certifying details of a claim...." *See,* Policy, ¶50.

18.    The Cat. No. 83 derecho struck the plaintiffs on the eve of preparation of the above mentioned PGA event, after the participants, like Tiger Woods and other world-renowned golfers, were booked to participate in the event, after advertisements of the event had occurred for a year, television contracts for coverage of the event were purchased, guests from around the country had booked their reservations, performers for concerts were booked, and all arrangements for the event had been made.  This event was instituted to improve public interest and recognition of The Greenbrier Hotel and to restore its significance and relevance to the world as a destination resort hotel in West Virginia.  The cost of sponsoring and paying for this event approximated $24 million, and the cancellation of this event would have devastated the plaintiffs.  The cost would have crippled the plaintiffs financially and caused large, long term permanent damage from lost revenue, reputation as a destination resort, and would have caused permanent loss, particularly since the PGA tournament event was only recently started at The Greenbrier.

19.     Only three days before the event was to begin, the storm struck, destroying the golf courses which had already been perfectly prepared, knocked out power supply and inflicted the damage indicated above, and plaintiffs were faced with not only the physical damage but also the notoriety of the storm's devastation at the plaintiffs' hotel and facilities, which deterred guests from attending the event.  Plaintiffs were therefore faced with having to refund moneys and attempting to encourage their guests to attend regardless of the storm.

20.     Through extraordinary efforts, participation and expenditures of significant moneys, plaintiffs were able to go forward with the PGA tournament and some other events associated therewith but they sustained large damages, lost revenue, incurred extraordinary expenses, and both past and future business interruption losses.

21.     Plaintiffs purchased the insurance policy for the purpose of protecting the plaintiffs' businesses from economic damage to its businesses, such as was sustained herein.

22.     The plaintiffs gave defendants notice of the loss resulting from Cat. No. 83 as soon as practicable, as required under Paragraph 44 of the Policy.

23.     During 2012 and extending several months into 2013, the Greenbrier and the Sporting Clubs, directly and by and through their agents, submitted to defendants proof of loss resulting from Cat. No. 83, including the specific amount of the loss, and full particulars supporting the loss, by providing such proof of loss to the Designated Loss Adjuster identified in Paragraph 45 of the Policy.

24.     Prior to June, 2013, the defendants, by and through their Designated Loss Adjuster, paid a small portion of the aforesaid loss.  However, defendants have failed and refused to pay the remainder of the loss claimed by the plaintiffs.  By and through letters sent by their Designated Loss Adjuster, dated June 13, 2013 and January 2, 2014, copies of which are

{L0513065 1 }

7

attached hereto as Exhibits "B" and "C" respectively, defendants have essentially declined to make payment of the loss in full.

25.     Pursuant to Paragraph 49 of the Policy, the defendants are obligated to pay claims "...no later than thirty (30) days after presentation of proofs of loss by the Insured or its appointed representative." As stated, the plaintiffs and their designated representatives provided proof of loss within the meaning of Paragraph 49 many months ago. Nonetheless, the defendants have failed to make payment of the claim in full as required under Paragraph 49 above-quoted.

### COUNT I – BREACH OF THE INSURANCE CONTRACT

26.     Paragraphs 1 through 25 above are incorporated herein by reference.

27.     The defendants have failed to make payment of the plaintiffs' property insurance claim within thirty (30) days after presentation of proof of loss, in breach of the provisions of the Policy.

28.     As a direct and proximate result of the defendants' breach of the insurance contract, the plaintiffs have suffered the following injuries and damages:

(a)     Plaintiffs have been deprived of proceeds of the Policy that are due and payable;

(b)     Plaintiffs have suffered economic loss as a consequence of the failure of the defendants to make timely and appropriate payment of the proceeds of the Policy;

(c)     Plaintiffs have suffered aggravation and inconvenience and damages associated therefrom by virtue of the failure of the defendants to make timely and appropriate payment of the proceeds of the Policy;

(d)     Plaintiffs have been forced to incur litigation costs and expenses, including attorneys' fees as a direct and proximate result of the defendants' failure to make timely and appropriate payment of this insurance claim; and

{L0573065.1}

8

(e)     Plaintiffs have otherwise been damaged thereby.

29.     In addition, the plaintiffs have incurred expenses for preparing the claim within the meaning of Paragraph 50 of the Policy.

WHEREFORE, the plaintiffs demand judgment for compensatory damages against the defendants, and each of them, for all damages, losses, costs and expenses sustained by the plaintiffs by virtue of the defendants' breach of the insurance contract. In addition, if and to the extent that the evidence demonstrates that the defendants acted with intentional disregard of their duties and a high threshold of actual malice in refusing to pay the plaintiffs' property insurance claim, the plaintiffs also demand punitive damages in an amount that is just and appropriate, a trial by jury, the costs and disbursements of this action, and for such other and further relief as the Court deems just and proper.

## COUNT II – DECLARATORY RELIEF

30.     Paragraphs 1 through 29 above are incorporated herein by reference.

31.     By virtue of a letter dated February 24, 2014, the defendants, by and through their Designated Loss Adjustor, made a demand for appraisal under the Policy. A true and correct copy of the letter containing said demand is attached hereto as Exhibit "D".

32.     The appraisal provision in the Policy provides:

If the insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company **made within 60 days after receipt of proof of loss** by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire. (Emphasis added.)

*See*, Policy, ¶51.

33.    The defendants attempt to invoke the appraisal provision more than 60 days after the receipt of the proof of loss. The demand for appraisal is untimely under the Policy, and the defendants' right to appraisal has been waived.

34.    The untimely demand for an "appraisal" represents the defendants' recalcitrance and plan and design to delay payment of the actual losses incurred under the Policy of insurance, and for defendants to pay plaintiffs less than the amount of plaintiffs' losses covered under the Policy which demonstrates that the untimely demand is made in bad faith.

WHEREFORE, the plaintiffs demand declaratory relief in the nature of a determination that the plaintiffs need not proceed with appraisal under the Policy, for attorney fees and costs, and for such other and further relief as the Court deems just and proper.

## COUNT III – UNFAIR AND UNLAWFUL CLAIMS PRACTICES

35.    Paragraphs 1 through 34 above are incorporated herein by reference.

36.    The defendants knew and/or in the exercise of reasonable standards of claim handling should recognize that there are amounts due and payable under the Policy. Nonetheless, defendants, individually and/or by and through their Designated Loss Adjuster, have stubbornly failed and refused to make payment of such amounts to the plaintiffs.

37.    Defendants have selectively gathered evidence and information that undermines the plaintiffs' claims, and they have ignored information that supports the plaintiffs' claims.

38.    Defendants have misinterpreted the evidence and information that has been made available in such a way as to minimize the plaintiffs' entitlement to proceeds of the Policy, and to support their refusal to pay the claim in full.

39.     Defendants have failed and refused to accord the rights of the plaintiffs' equal status with their own rights and interests in breach of the covenant of good faith and fair dealing that is implied in the Policy.

40.     The defendants acting directly, or by and through their Designated Loss Adjustor, have committed multiple violations of the West Virginia Unfair Claims Settlement Practices Act, W.Va. Code §33-11-4(9) and the regulations promulgated by the Insurance Commissioner in W.Va.C.S.R. 114-14-1.1 *et. seq.* including but not limited to the following:

(a)     Defendants have misrepresented or concealed, or failed to disclose pertinent policy provisions such as the provision extending coverage to "Expenses To Reduce Loss" set forth in Paragraph 14 of the Policy, in violation of W.Va. Code §33-11-4(9)(a) and W.Va.C.S.R. §114-14-4:01 and 4:02;

(b)     Defendants have repeatedly failed to acknowledge and act reasonably and promptly upon communications, in violation W.Va. Code §33-11-4(9)(b), and defendants have ignored the time periods specified in W.Va.C.S.R. §114-14-5:01 through 5:04;

(c)     Defendants have failed to adopt and implement reasonable standards for the investigation of plaintiffs' claims, in violation of W.Va. Code §33-11-4(9)(c), and their investigation has been manifestly unreasonable, partisan, biased and myopic, in violation of W.Va. Code §33-11-4(9)(d);

(d)     Defendants have obscured whether or not they are affording coverage or denying coverage for much of the plaintiffs' claims, in violation of W.Va. Code §33-11-4(9)(e);

(e)     Defendants have compelled plaintiffs to institute this action to recover amounts due under the Policy by repeatedly offering plaintiffs much less than plaintiffs are due and will ultimately recover under the Policy;

(f)     Defendants have delayed the investigation and/or payment of claims "...by requiring an insured...to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms," in violation of W.Va. Code §33-11-4(9)(l);

(g)     Defendants have failed to pay plaintiffs on their business interruption loss, extra expense and expense to reduce loss claims to influence plaintiffs to accept the amounts offered on the physical damage portion of the claim, in violation of W.Va. Code §33-11-4(9)(m); and

(h)     Defendants have denied or refused to pay a portion of the plaintiffs' claim under the "Business Interruption" coverage of the claim without a reasonable explanation, and defendants have failed to offer any explanation for refusing to pay under the "Expense To Reduce Loss" coverage, both of which violated W.Va. Code §33-11-4(9)(n).

41.     In addition to the unfair and unlawful manner of the handling of plaintiffs' claims, defendants have deliberately administered and investigated the claim in West Virginia using the services of out-of-state adjusters and investigators whom the plaintiffs believe not to be licensed as such in West Virginia, in violation of various provisions of West Virginia law. The failure to utilize West Virginia licensed adjusters and investigators may be directly and proximately causally related to the claim handling improprieties above-described.

42.     As a consequence of the aforesaid acts and business practices, plaintiffs have suffered harm and injury.

43.     As a proximate result of defendants' acts and omissions, your plaintiffs were damaged as set forth above.

44.    The conduct, acts, or omissions of the defendants, each of them individually and/or jointly, were extreme, careless, reckless, malicious, done in bad faith, and/or were willful and wanton so as to entitle the plaintiffs to an award of punitive damages.

WHEREFORE, plaintiffs demand judgment against defendants and each of them, both jointly and severally, for compensatory and/or punitive damages, prejudgment and post-judgment interest, attorneys' fees, the costs and disbursements of this action, a trial by jury and for such other and further relief as the Court deems just and proper.

GREENBRIER HOTEL CORPORATION, a West Virginia corporation; THE GREENBRIER SPORTING CLUB, INC., a West Virginia corporation; and THE GREENBRIER SPORTING CLUB DEVELOPMENT COMPANY, INC, a Delaware corporation

By Counsel

Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301
(304) 342-3106

Avrum Levicoff
West Virginia State Bar No. 4549
Levicoff, Silko & Deemer, P.C.
Suite 1900 Centre City Tower
650 Smithfield Street
Pittsburgh, Pennsylvania 15222-3911
(412) 434-5200

Counsel for Plaintiffs
F:\5\932\p001.docx

{L0573065 1 }                              14

**LEXINGTON INSURANCE COMPANY**
Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103
(hereinafter called the Company)

## COMMERCIAL PROPERTY POLICY
## DECLARATIONS

POLICY NUMBER:  025031460                      RENEWAL OF:  025031460

ITEM 1.    Named Insured:   RESORT HOTEL ASSOCIATION

        Address:       2100 EAST CARY STREET, SUITE 3
                   RICHMOND, VA 23223

ITEM 2.    Policy Period:
        From 02/28/2012      To 03/08/2013
        at 12:01 A.M. Standard Time at the address of the named insured shown above.

ITEM 3.    Limit of Insurance:
        60% BEING $15,000,000 PART OF $25,000,000 PER OCCURRENCE AND IN THE PRIMARY

        Total Premium                    Minimum Earned Premium

ITEM 4.    Perils:
        ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE INCLUDING FLOOD, EARTHQUAKE
        AND BOILER & MACHINERY AND AS FURTHER DESCRIBED IN THE APPROVED POLICY FORM

ITEM 5.    Description of Property Covered:                              Coinsurance
        REAL AND PERSONAL PROPERTY; MACHINERY AND EQUIPMENT; FURNITURE &      NIL
        FIXTURES; IMPROVEMENTS AND BETTERMENTS; INVENTORY; STOCK; EDP
        HARDWARE, MEDIA AND DATA; BUSINESS INCOME / GROSS EARNING / EXTRA
        EXPENSE AND AS FURTHER DESCRIBED IN THE POLICY FORM

ITEM 6.    Mortgagee Clause: Loss, if any shall be payable to:

ITEM 7.    Forms Attached:

        See attached forms schedule

PLAINTIFF'S
EXHIBIT

A

_Eric P. Ull_

Authorized Representative OR
Countersignature (in states where applicable)

PRPDEC (Ed.01/91)
LX1119

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from the Chartis companies.  Chartis insurance companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by Chartis insurance companies to brokers and independent agents in the United States by visiting our website at www.chartisinsurance.com/producercompensation or by calling 1-800-706-3102.

91222 (12/09)

**FORMS SCHEDULE**

Named Insured:    RESORT HOTEL ASSOCIATION
Policy No:    025031460                                            Effective Date:  02/28/2012

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| PRPDEC | 01/91 | | PROPERTY DEC |
| PRFIRS | 01/91 | | FIRE SCHEDULE |
| PR9019 | 01/94 | | STANDARD PROPERTY CONDITIONS |
| 96554 | 04/08 | | TERRORISM EXCL CERT & NON-CERT |
| NMA2918 | 08/01 | | WAR & TERRORISM EXCLUSION |
| | | | BROKER MANUSCRIPT |
| | | 011 | ANTI-STACKING ENDORSEMENT |

FIRE

**Schedule of Covered Locations**

Policy Number:   025031460

Issued to:   RESORT HOTEL ASSOCIATION

| Description of Premises | Limit | Percent of Coins |
|---|---|---|
| AS PER SCHEDULE ON FILE WITH THE COMPANY | $15,000,000 | NIL |

# LEXINGTON INSURANCE COMPANY
## Standard Property Conditions

This endorsement effective  02/28/2012 forms a part of Policy Number  025031460

Issued to  RESORT HOTEL ASSOCIATION

by

LEXINGTON INSURANCE COMPANY          (hereinafter called "the Company").

In consideration of the premium charged, the following clauses are hereby made applicable under this policy.

### MINIMUM EARNED PREMIUM CLAUSE

In the event of cancellation of this policy by the Insured, a minimum premium of                    shall become earned, any provision of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the Insured remits and the Company receives the full policy premium with 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not effect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

### POLICY DEDUCTIBLE

Each claim for loss or damage separately occurring shall be adjusted separately and from each such adjusted claim, the amount of  $25,000          shall be deducted. Notwithstanding the foregoing, the deductible amount applying to certain peril(s) insured against by this policy shall be as follows:

$25,000          deductible applying to  AOP & AS PER POLICY FORM
                 deductible applying to
                 deductible applying to
                 deductible applying to
                 deductible applying to

In the event of any other insurance covering the property insured hereunder, whether or not concurrent, the deductible(s) specified herein shall apply in full against that portion of any claim for loss or damage which the Company is called upon to pay under the provisions of the Apportionment Clause irrespective of any provisions to the contrary of such other insurance.

### CANCELLATION CLAUSE

Except and to the extent of the Minimum Earned Premium Clause which is part of this policy, this clause supersedes other cancellation clauses made a part of this policy.

CANCELLATION: This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this policy or last known address, written notice, stating when, not less than 90      days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

### SERVICE OF SUIT CLAUSE

Service of Suit In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Company stated on Declarations, 100 Summer Street, Boston, Massachusetts, 02110-2103, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision

1 of 2

PR9019 (Ed.01/94)
LXI101

of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

### WAR RISK EXCLUSION CLAUSE

The Company shall not be liable for any loss, caused directly or indirectly, by (1) hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack (a) by government or sovereign power (dejure or de facto) or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or force (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction; (4) any consequence of any of the foregoing.

### NUCLEAR EXCLUSION CLAUSE

The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or not, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy. If the peril of fire is insured under this policy, then, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

### SALVAGE AND RECOVERY CLAUSE

All salvages, recoveries and payments recovered or received either prior or subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto, including deduction of the Company's cost of recovery or salvage.

### REPORTING CLAUSE

Notwithstanding that the Insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated as the policy limit of liability.

### PROOF OF LOSS AND PAYMENT

The Insured shall complete and sign a sworn proof of loss within ninety (90) days after the occurrence of a loss (unless such period be extended by the written agreement of the Company) stating the time, place and cause of loss, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, and all other insurance thereon. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company at 100 Summer Street, Boston, Massachusetts 02110-2103.

### GOVERNMENT ACTIVITY CLAUSE

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

_Secretary_

_David Bresnahan_
_President_

2 of 2

PR9019 (Ed.01/94)
LX1101

ENDORSEMENT

This endorsement, effective 12:01 AM 02/28/2012

Forms a part of policy no.:  025031460

Issued to: RESORT HOTEL ASSOCIATION

By: LEXINGTON INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TERRORISM EXCLUSION - CERTIFIED AND NON-CERTIFIED ACTS

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of an "act of terrorism", which is defined in the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 (collectively, "TRIA") as follows:

   (1) ACT OF TERRORISM. -
      (A) CERTIFICATION. - The term "act of terrorism" means any act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and the Attorney General of the United States -
         (i)  to be an act of terrorism;
         (ii) to be a violent act or an act that is dangerous to -
            (I)   human life;
            (II)  property; or
            (III) infrastructure;
         (iii) to have resulted in damage within the United States, or outside of the United States in the case of -
            (I)  an air carrier or vessel [described in TRIA]; or
            (II) the premises of a United States mission; and
         (iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
      (B) LIMITATION. - No act shall be certified by the Secretary as an act of terrorism if -
         (i)  the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
         (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
      (C) DETERMINATIONS FINAL. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
      (D) NONDELEGATION. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

This insurance also does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of a "non-certified act of terrorism", which means any act that is not an "act of terrorism", as defined above, that
   (1) involves the use of force or violence against person or property;
   (2) is dangerous to human life or property; or
   (3) interferes with or disrupts an electronic or communication system; and
   (4) is undertaken by any group or person, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

96554 (4/08)                                                         Page 1 of 2

(A) a government;
(B) the civilian population of a country, state or community; or
(C) to disrupt the economy of a country, state or community.

All other terms and conditions of the policy are the same.

Authorized Representative or
Countersignature (In States Where
Applicable)

**ENDORSEMENT**

This endorsement, effective 12:01 AM 02/28/2012

Forms a part of policy no.:  025031460

Issued to: RESORT HOTEL ASSOCIATION

By: LEXINGTON INSURANCE COMPANY

<u>WAR AND TERRORISM EXCLUSION ENDORSEMENT</u>
**(Applies to locations outside the United States of America, its territories and possessions)**

This endorsement modifies insurance provided by the policy:

Notwithstanding any provision to the  contrary within this insurance or any endorsement thereto, it is agreed that this insurance excludes  loss, damage, cost or expense  of whatsoever nature directly or indirectly caused by, resulting from  or in connection with any  of the following regardless of  any other cause or event contributing concurrently or in any other sequence to the loss:

1.      War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.      Any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act including,  but not limited to, the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of  or in connection with any organization(s)  or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement  also excludes loss, damage,  cost or  expense of whatsoever nature  directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1. and/or 2. above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense  is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this  endorsement is found to be invalid  or unenforceable, the remainder shall remain in full force and effect.

All other terms and conditions of the policy remain the same.

NMA2918
08/10/2001
LX8569

Authorized Representative OR
Countersignature (in states where applicable)



# RESORT HOTEL
## ASSOCIATION

**Property / Boiler & Machinery Policy**

**12 Months Effective February 28th, 2012**

**TABLE OF CONTENTS**

1.  NAMED INSURED........................................................................................................... 1
2.  TERM OF INSURANCE.................................................................................................. 1
3.  PARTICIPATION............................................................................................................. 1
4.  LIMITS OF LIABILITY.................................................................................................... 1
5.  DEDUCTIBLE ................................................................................................................. 4
6.  LOSS PAYABLE ............................................................................................................ 5
7.  TERRITORY .................................................................................................................... 5
8.  PROPERTY COVERED.................................................................................................. 5
9.  OFF-PREMISES POWER .............................................................................................. 7
10. PROPERTY EXCLUDED................................................................................................ 7
11. PROPERTY VALUATION............................................................................................... 8
12. BUSINESS INTERRUPTION ....................................................................................... 10
13. EXTRA EXPENSE ........................................................................................................ 11
14. EXPENSE TO REDUCE LOSS ................................................................................... 11
15. SOFT COSTS................................................................................................................ 11
16. RENTAL VALUE/RENTAL INCOME ........................................................................... 12
17. ROYALTIES .................................................................................................................. 13
18. LEASEHOLD INTEREST.............................................................................................. 13
19. PERIOD OF RESTORATION APPLICABLE TO TIME ELEMENT COVERAGES ..... 14
20. EXTENSIONS OF TIME ELEMENT COVERAGE....................................................... 15
21. TRANSIT ....................................................................................................................... 16
22. ACCOUNTS RECEIVABLE.......................................................................................... 17
23. PERILS INSURED AGAINST ....................................................................................... 18
24. BOILER & MACHINERY ............................................................................................... 18
25. PERILS EXCLUDED ..................................................................................................... 18
26. DEFINITIONS ................................................................................................................ 20
27. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES .............................. 23
28. LIBERALIZATION CLAUSE .......................................................................................... 23
29. SEVERABILITY OF INTERESTS ................................................................................. 23
30. DEBRIS REMOVAL....................................................................................................... 24
31. DEMOLITION AND INCREASED COST OF CONSTRUCTION.................................. 24
32. EXPEDITING EXPENSE ............................................................................................... 25
33. ARSON/THEFT REWARD ............................................................................................ 25
34. CONTRIBUTING INSURANCE..................................................................................... 25
35. EXCESS INSURANCE.................................................................................................. 25
36. UNDERLYING INSURANCE......................................................................................... 25
37. OTHER INSURANCE.................................................................................................... 25
38. SUBROGATION............................................................................................................ 25
39. SALVAGE AND RECOVERIES .................................................................................... 26
40. CONTROL OF DAMAGED MERCHANDISE ............................................................... 26
41. BUILDERS RISK............................................................................................................ 26
42. BRAND OR TRADEMARK............................................................................................ 26
43. ERRORS OR OMISSIONS ........................................................................................... 27
44. NOTICE OF LOSS ........................................................................................................ 27
45. DESIGNATED LOSS ADJUSTER ................................................................................ 27
46. PROOF OF LOSS ......................................................................................................... 27
47. NON-REDUCTION OF LIMITS OF LIABILITY ............................................................ 27
48. PARTIAL PAYMENT OF LOSS.................................................................................... 27
49. PAYMENT OF LOSS..................................................................................................... 27
50. LOSS ADJUSTMENT EXPENSES ............................................................................... 28
51. APPRAISAL .................................................................................................................. 28

52. CONSEQUENTIAL LOSS ................................................................................ 28
53. PAIR AND SET.............................................................................................. 28
54. CONSEQUENTIAL REDUCTION IN VALUE ................................................ 28
55. PERMITS....................................................................................................... 28
56. INSPECTION AND AUDIT ........................................................................... 29
57. COINSURANCE WAIVER ............................................................................ 29
58. VALUES......................................................................................................... 29
59. ASSISTANCE AND COOPERATION OF THE INSURED ............................ 29
60. PROTECTION & PRESERVATION OF PROPERTY .................................... 29
61. REINSTATEMENT......................................................................................... 29
62. SUIT AGAINST THE COMPANY .................................................................. 29
63. CERTIFICATES OF INSURANCE ................................................................ 29
64. ADDITIONAL INTERESTS ........................................................................... 30
65. NOTIFICATION CLAUSE ............................................................................. 30
66. CANCELLATION........................................................................................... 30
67. TITLES OF PARAGRAPHS .......................................................................... 31
68. MORTGAGE CLAUSE.................................................................................. 31
69. POLLUTANT CLEAN UP AND REMOVAL................................................... 31
70. STEPDOWN/DROPDOWN/PRIORITY OF PAYMENTS .............................. 31
71. JURISDICTION ............................................................................................. 32
72. TAX LIABILITY ............................................................................................. 32
73. COINSURANCE DEFICIENCY..................................................................... 32
74. DEVALUATION/REVALUATION................................................................... 33
75. TENANTS & NEIGHBORS LIABILITY.......................................................... 33
76. TAX TREATMENT OF PROFITS .................................................................. 33
77. CURRENCY................................................................................................... 33
78. DIFFERENCE IN CONDITIONS................................................................... 33
79. ATTACHMENT CLAUSE .............................................................................. 34
APPENDIX # 1 ...................................................................................................... 35
APPENDIX # 2 ...................................................................................................... 36
ENDORSEMENT # 1 ............................................................................................ 38
ENDORSEMENT # 2 ............................................................................................ 39
ENDORSEMENT # 3 ............................................................................................ 40
ENDORSEMENT # 4 ............................................................................................ 41
ENDORSEMENT # 5 ............................................................................................ 43
ENDORSEMENT # 6 ............................................................................................ 44
ENDORSEMENT # 7 ............................................................................................ 46
ENDORSEMENT # 8 ............................................................................................ 47
ENDORSEMENT # 9 ............................................................................................ 48
ENDORSEMENT # 10 .......................................................................................... 54

Resort Hotel Association Property Policy – February 28, 2012

1.   **NAMED INSURED**

This policy does insure RESORT HOTEL ASSOCIATION and its members, and any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, and the insured's interest in partnerships and/or joint ventures, and/or any owned (wholly or partially) or controlled company (ies) where the insured maintains an interest, as now or hereafter constituted or acquired; and any other party or interest for which the insured has assumed the responsibility of purchasing insurance and Resort/Hotel Owners and other interested parties as endorsed herein as their interest may appear.

All hereafter referred to as the "Insured."

2.   **TERM OF INSURANCE**

In consideration of the participation premium of $          being 60 percent of the 100 percent annual layer premium of $          , this policy attaches and covers from February 28, 2012 to March 8, 2013, beginning and ending at 12:01 A.M., standard time, at the location of the property involved.  It is agreed that the actual effective time of attachment of this insurance on the above date shall be the same time on the above date as the actual effective time of cancellation or expiration of the policy (ies) replaced or renewed by this policy.

3.   **PARTICIPATION**

This policy covers for a 60% or USD15,000,000 part of Primary USD25,000,000· excess of DEDUCTIBLE interest in this insurance, and this Company shall not be liable for more than this proportion of the Limits of Liability as specified in Clause 4.

4.   **LIMITS OF LIABILITY**

This Company shall not be liable for more than its proportion of USD 600,000,000 per occurrence, except for the program sublimits detailed below. When a program sublimit of liability is shown as applying in the annual aggregate, this Company's maximum limit of liability will not exceed its proportion of such limit during any policy year regardless of the number of locations and coverage(s) involved. The total amount to be indemnified under this policy and for all insureds hereunder, including those stated in the Named Insured Endorsements, and in accordance with the Severability of Interests Clause, shall not exceed the overall limit or applicable sublimits stated in this policy. In all cases, the following sublimits shall apply unless the Named Insured Endorsement states that such sublimits are superseded.

**PROGRAM SUBLIMITS:**

| | |
|---|---|
| USD250,000,000 | per occurrence as respects Named Windstorm, as defined herein, to locations in Tier 1 Windstorm counties as per Appendix #1 herein |
| USD 225,000,000 | per occurrence and in the annual aggregate as respects the peril of Flood for locations wholly or partially within the Special Flood Hazard Areas as defined herein. |
| USD200,000,000 | per occurrence and in the annual aggregate as respects Earthquake Shock in Earthquake Zones as listed in Appendix #2 herein. (Alaska, Hawaii, New Madrid, Pacific Northwest, and Mexico) |

1

Resort Hotel Association Property Policy – February 28, 2012

|  | Unless endorsed hereon, Earthquake Shock in California is excluded for all resorts |
|---|---|
| USD100,000,000 | per occurrence as respects Accounts Receivable |
| USD100,000,000 | per occurrence as respects Brands or Trademarks |
| USD100,000,000 | per occurrence as respects Demolition and Increased Cost of Construction |
| USD100,000,000 | per occurrence as respects Civil Authority, not to exceed 60 consecutive days |
| USD100,000,000 | per occurrence as respects Ingress / Egress, not to exceed 60 consecutive days |
| USD100,000,000 | per occurrence as respects Contingent Business Interruption. |
| USD100,000,000 | per occurrence as respects Extra Expense |
| USD100,000,000 | per occurrence as respects Fine Arts |
| USD100,000,000 | per occurrence as respects Leasehold Interest |
| USD100,000,000 | per occurrence as respects Rental Value |
| USD100,000,000 | per occurrence as respects Off Premises Power/Service Interruption, except $1,000,000 per occurrence loss or damage resulting from an Accidental Occurrence as defined herein (not to exceed 30 days) |
| USD100,000,000 | per occurrence as respects Valuable Papers & Records |
| USD100,000,000 | per occurrence as respects Boiler & Machinery, except: |
|  | USD25,000,000 per occurrence as respects Off Premises Property Damage as a result of a boiler and machinery accident |
|  | USD25,000,000 per occurrence as respects Contingent Business Income as a result of a boiler and machinery accident |
|  | USD25,000,000 per occurrence as respects Perishable Goods as a result of a boiler and machinery accident |
|  | USD25,000,000 per occurrence as respects Expediting Expense as a result of a boiler and machinery accident |
|  | USD5,000,000 per occurrence as respects Hazardous Substance as a result of a boiler and machinery accident |
|  | USD1,000,000 as respects Data Restoration, Replacement, and Research as a result of a boiler and machinery accident |
|  | USD1,000,000 as respects Soft Costs as a result of a boiler and machinery accident |
| USD25,000,000 | per occurrence and in the annual aggregate as respects the application of the Mold, Mildew & Fungus Endorsement |

2

Resort Hotel Association Property Policy – February 28, 2012

| | |
|---|---|
| | The greater of 25% of loss or USD20,000,000 per occurrence as respects Debris Removal. This sublimit does not apply to Plants, Trees, Shrubs, Lawns & Golf Courses. |
| USD25,000,000 | per occurrence for Builders Risks for Property Damage and Time Element combined. However, this sublimit shall not apply to additions, improvements, renovations, alterations, or repairs to existing structures. ( This sub-limit does not apply to Property Damage and Time Element losses to existing property that result from a covered Builders Risk loss) |
| USD25,000,000 | per occurrence as respects Tax Liability |
| USD25,000,000 | per occurrence as respects Coinsurance Deficiency |
| USD25,000,000 | per occurrence as respects Currency Devaluation |
| USD25,000,000 | per occurrence as respects Tenants & Neighbors Liability |
| USD25,000,000 | per occurrence as respects Tax Treatment of Profits |
| USD10,000,000 | per occurrence for Automatic Acquisitions (90 day reporting) |
| USD10,000,000 | per occurrence as respects Plants, Trees, Shrubs, Lawns & Golf Courses, including resultant Debris Removal not to exceed USD5,000 any single Plant, Tree, Shrub or Lawn whether on or off a golf course or USD550,000 per Golf Course hole |
| | The term "Lawn" does not apply to golf course tees, greens or fairways. |
| | Debris Removal included up to 25 feet beyond the tree line from where natural growth commences. Replacement of Plants, Trees, and Shrubs in the area excluded. |
| USD5,000,000 | per occurrence as respects Attraction Properties within a 5 mile limitation of the insured's premises |
| USD5,000,000 | per occurrence as respects Miscellaneous Unscheduled Locations |
| USD5,000,000 | per occurrence as respects Architects & Engineering fees |
| USD5,000,000 | per occurrence and annual aggregates as respects Pollutant Clean Up and Removal of land and water on insured property |
| USD5,000,000 | per occurrence as respects Use of Water |
| USD5,000,000 | per occurrence as respects Property in Transit |
| USD5,000,000 | per occurrence and in the annual aggregate as respects Upgrade To Green coverage endorsement |
| USD2,500,000 | per occurrence as respects Soft Costs However, this sublimit shall not apply to additions, improvements, renovations, alterations, or repairs to existing structures. |
| USD1,000,000 | per occurrence as respects Loss of Attraction |
| USD250,000 | per occurrence, per Named Insured Endorsement as respects Loss Adjustment Expenses |
| USD250,000 | per occurrence as respects Fire Brigade Charges & Extinguishing Expenses |

3

Resort Hotel Association Property Policy – February 28, 2012

| | |
|---|---|
| USD250,000 | per occurrence as respects Guest and 3rd Party Property while on the Insured's premises |
| USD250,000 | per occurrence as respects Guest Relocation Expenses |
| USD25,000 | per occurrence and USD50,000 in the annual aggregate as respects Arson/Theft Reward |

Stated Value for Other Land Improvements, as defined herein

5.  **DEDUCTIBLE**

For the purposes of applying the deductible, all loss or damage arising out of any one occurrence shall be adjusted as one loss at any location or locations listed on any individual Named Insured Endorsement and from the amount of such adjusted loss shall be deducted the deductible amount(s) shown on the Named Insured Endorsement.  In all cases, the following minimum deductibles shall apply unless the Named Insured Endorsement states such minimum deductibles are superseded.

USD25,000 per occurrence except:

USD100,000 per occurrence for loss or damage involving plants, trees, shrubs, lawns and golf courses including resultant debris removal, except $500,000 per occurrence as respects loss or damage from Named Windstorm to such property located in the Tier 1 Windstorm Counties as listed in Appendix 1 of this policy, and for the peril of Flood and Flood in Special Flood Hazard Areas as defined herein.

USD100,000 per occurrence for all losses involving Beach Improvements, and Other Land Improvements, except for the peril of Flood and Flood in Special Flood Hazard Areas as defined herein.

Service Interruption, Interruption by Civil or Military Authority, Ingress/Egress – 24 hour waiting period.  If the period of interruption exceeds this waiting period, the applicable peril deductible which is stated on the individual named insured endorsement is then applied to the amount of loss sustained for the entire period of interruption, commencing with the time and date of the initial interruption.  If the period of interruption is less than the waiting period, there shall be no liability under this policy

USD25,000 per occurrence for Loss of Attraction or the all risk deductible shown on the Insured's Named Insured Endorsement, whichever is greater.

USD25,000 per occurrence as respects Preservation of Property from Named Windstorm to such property located in the Tier 1 Windstorm Counties as listed in Appendix 1 of this policy

30 Day Waiting Period as respects Delay in Opening

The all risk deductible shown on the Named Insured Endorsement, or a minimum of USD25,000 any one occurrence (whichever is greater) as respects Terrorism.

The following additional provisions apply to Deductibles:

- If two or more deductible amounts in this policy apply to a single occurrence which involves multiple perils (or causes of loss) with differing deductibles, the total to be deducted shall not exceed the amount of the largest individual deductible pertaining to any one of the perils (or cause of loss) involved in the occurrence.

  However, in the event that a single occurrence (i.e. windstorm) involves multiple locations and/or properties that are damaged by the same peril or cause of loss and in which the

Resort Hotel Association Property Policy – February 28, 2012

applicable deductibles vary by location and/or insured property, each differing deductible shall be applied separately to their respective locations and/or properties (except in the instance of plants, trees, and shrubs, lawns, and golf courses, where the deductibles applied separately).

If a single occurrence involves both multiple perils with differing deductibles and, also involves multiple locations or properties to which differing deductibles pertaining to the same peril applying, separately to such locations or properties; then only the higher of the two deductibles shall apply to the entire occurrence.
In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s) specified in this section, notwithstanding the above

The deductible amounts specified above shall not apply to general average contributions and salvage charges.

- If Other Insurance applies to the same property as insured hereunder, and to the extent recovery is made from such other insurance, the deductible under this policy shall be reduced by such recovery, but in no event shall the deductible under this policy be less than shown in the policy.  If recovery from such other insurance is greater than the deductible in this policy, then the deductible under this policy shall not apply.

- For Property situated partially or wholly within the Special Flood Hazard Areas as defined herein, as determined at the time of the loss, physical damage coverage is in excess of maximum limits available through the National Flood Insurance Program whether purchased or not.

6.   **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to the insured, or as directed by the insured.

7.   **TERRITORY**

This policy covers worldwide, except for Afghanistan, Angola, Bosnia-Herzegovina, Burma (Myanmar), Congo (The Democratic Republic Of Congo formerly known as Zaire), Croatia, Cuba, El Salvador, Guam, Haiti, Iran, Iraq, Laos, Lebanon, Liberia, Libya, Nicaragua, North Korea, Serbia-Montenegro, Slovenia, Sudan, Syria, Zimbabwe, Yugoslavia and/or territories formerly known as Yugoslavia;

Furthermore, and notwithstanding the definition of coverage territory or anything else to the contrary no matter where located, if coverage for a claim under this policy is in violation of any applicable economic, trade or other sanction or law, including without limitation any sanction administered or enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim shall be null and void. . The territory includes coastal and inland waterways between points and places therein.

8.   **PROPERTY COVERED**

Except as hereinafter excluded, this policy covers the interest of the insured in all real and personal property owned, used, leased or intended for use by the insured or in which the insured may have an insurable interest, or for which the insured may be responsible for the insurance, or real or personal hereafter constructed, erected, installed, or acquired including while in course of construction, erection, installation, and assembly including Improvements and Betterments. In the event of loss or damage, this Company agrees to accept and consider the insured as sole and

5

unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.  This policy is extended to include:

a)   At the option of the Insured, the interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by contract, whether written or oral, for such property, including the cost to defend any allegations of liability for loss or damage to such property.

b)   At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

c)   Contractors' and/or subcontractors' (of any tier) and/or vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by contracts, whether written or oral.

d)   At the option of the Insured, the interest of the Insured's customers in property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan including property, which is leased to customers under a lease/purchase agreement.

e)   Real and personal property of others that the Insured has agreed to insure prior to loss or damage including property not in the Insured's care, custody or control and at the Insured's option the interest of the owner of such property.

f)   Property while in the course of construction and/or during erection, assembly and/or installation on an already insured location but excluding golf courses while in the course of construction unless otherwise endorsed hereon.

g)   Architects Fees and Engineering Fees

h)   Automatic Acquisitions – It is understood and agreed that this Policy is automatically extended to cover additional property and interests as described in this Policy, which may be acquired or otherwise become at the risk of the Assured during the term of this Policy, within the territorial limits of the Policy, subject to details of said property and interest with values to be provided to Underwriters for their consideration not later than 90 days from the said additional property and/or interests have become at the risk of the Assured, this policy providing coverage automatically for such period of time. In the event reporting does not occur within 90 days, the Miscellaneous Unscheduled Location sublimit shall apply.

The terms, conditions, and pricing of all reported acquisitions greater than $10,000,000 are to be established by the lead market on the primary layer of coverage. All other following markets on the primary and excess layers, will be bound to the terms, conditions, and pricing(s) of the lead. This condition shall not apply to acquisitions located within Tier 1 Wind Zones, the State of California when purchasing Earthquake coverage, and international locations.

i)   Guest Property – This policy covers Personal Property of registered guests and other patrons and customers of the resort, patrons and customers while on premises, not otherwise excluded by this policy.

j)   Other Land Improvements - Defined as, but not limited to, any alteration of the natural condition of the land by grading, excavating, landscaping, the establishment of earthen dikes or dams, as well as additions to land such as pavements, roadways, bridges, parking lots, patios, retaining walls not affixed to a building, ponds, and stabilization vegetation,; including demolition and increased cost of construction and including costs of grading, excavation, landfill, and/or earth moving as needed to repair, replace, reclaim, and/or restore such Other Land Improvements.

Buildings, structures, clubhouses, out buildings, maintenance buildings, equipment, and other similar structures are not considered Other Land Improvements, but are real and/or personal property otherwise insured hereunder.

Resort Hotel Association Property Policy – February 28, 2012

Beach Improvements, such as seawalls, sea groins, bulkheads, protected sand dunes and stabilization vegetation are not considered Other Land Improvements, and are otherwise insured hereunder.

Landscaping, such as trees, lawns, or plants, and golf courses are not considered Other Land Improvements, and are otherwise insured hereunder.

9.     OFF-PREMISES POWER

This Policy, subject to all its provisions and without increasing the limit of said Policy, also insures against damage and/or loss, and/or Time Element due to damage or loss by the perils insured against, of any off premises utility, power station, substations, transformer or switching or pumping station, telecommunications, voice, data, video, and other utility and appurtenant equipment including, but not limited to, off premises poles, towers, transmission or distribution lines and reservoirs, furnishing electricity, steam, water, power or gas to premises insured hereunder.

It is further understood and agreed that this Policy, subject to all its provisions and without increasing the limit of said Policy, also insures against damage and/or loss, and/or Time Element due to damage or loss by an Accidental Occurrence as defined herein.  Coverage under this section shall be limited to $1,000,000 per occurrence, not to exceed 30 consecutive days.

Coverage will apply when the period of service interruption is in excess of the time shown as the waiting period.  "Period of Service Interruption" shall mean the period starting with the time when an interruption of specific services occurs and ending when with due diligence and dispatch the service could be wholly restored.

This policy does not cover loss resulting from any interruption of business as a result of interruptions involving Satellites.

10.     PROPERTY EXCLUDED

This policy does not cover loss or damage to:

a)     Currency, money, notes, securities, gold bullion, evidence of debt, except accounts receivable as defined in the policy, bills, notes or securities except as otherwise defined in this policy.

b)     Land, except this exclusion does not apply to Land Improvements as defined and insured under the Property Insured section of this policy, nor as respects the coverage as insured under the Pollutant Clean Up and Removal clause of this policy.

c)     Water, except as insured under the Pollutant Clean Up and Removal clause, or when contained in any form of piping system, processing system or holding tank or used in the manufacturing process. This exclusion shall also not apply to Clauses 20. B and 20. F.

d)     Live Animals not used for research, unless otherwise endorsed hereon.

e)     Growing crops and standing timber to be used for industrial processes unless otherwise endorsed hereon.

f)     Aircraft, Watercraft over forty feet only while waterborne, and motor vehicles licensed for highway use, except this exclusion shall not apply to contractor's equipment, property which constitutes stock or which is on exhibit or being repaired, nor barges or vessels while permanently moored, nor gaming or other equipment or property of the insured while located thereon.  Motor vehicles of guests and the contents therein are specifically excluded.

g)     Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to

7

discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

h) Waterborne shipments via the Panama Canal and waterborne shipments to and from Alaska, Hawaii, Puerto Rico and the Virgin Islands.

i) Plants, trees, shrubs and lawns, which are part of a golf course when golf course coverage is excluded.

j) Furs

k) Jewelry, precious metals, and precious stones

l) Underground mining.

m) Transmission and distribution lines of every type and description; except when located on the insured premises or within one mile thereof

11. **PROPERTY VALUATION**

The basis of loss adjustment shall be as follows:

a) On buildings and structures, at the replacement cost new; if not replaced, then at the actual cash value.

b) On machinery, equipment, furniture, fixtures and improvements and betterments at the replacement cost new; if not replaced, then at the actual cash value.

c) Valuable Papers & Records/Electronic Data Processing Media: the cost to repair or replace the property with other of like kind and quality including the cost of labor, service or supplies consumed in reconstructing, reproducing, recreating, transcribing or copying information; or, if not so replaced, the value blank.

d) Raw materials and supplies: The replacement cost new.

e) Stock in process: The value of raw materials and labor expended plus the proper proportion of overhead charges.

f) Finished stock and other merchandise for sale: The regular cash selling price less all discounts and charges to which such property would have been subject had no loss occurred.

g) Electronic data processing equipment, production machinery and all other equipment: The cost to repair or replace new with like kind and quality, or at the insured's option, the insured may elect to replace such equipment with equipment having technological advances and/or representing an improvement in function and/or forming part of a program of system enhancement and/or more consistent with the insured's technology strategy (without any reduction or offset for betterment) provided that such replacement cost can be accomplished without increasing the insurers liability. The insured, using reasonable discretion, shall be the sole judge as to whether the equipment is damaged and unusable. This insurer shall be allowed to dispose of, as salvage, any non-proprietary property deemed unusable by the insured.

h) Fine Arts owned by the insured, or within its care, custody or control for which they are legally liable to insure, at the cost of reasonably restoring the property to its condition immediately prior to the loss, or in the event that the property cannot be restored at the appraised value prior to the loss. In absence of such appraisal, at the market value at the time of loss.

i) With respect to properties that qualify for historical landmark status, as designated by the Local Register, National Register, National Landmark Register of Historical Places, or other local equivalent, the insured shall have sole discretion as to the means by which said property shall be repaired, rebuilt, or replaced, including but not limited to the quality

8

of materials, workmanship and design, but not to exceed the actual costs which would have been incurred in order to comply with historical landmark status requirements.

With respect to properties that may not necessarily qualify for historical landmark status, but due to the esthetic quality of its materials, workmanship and design the Insured shall have sole discretion as to the means by which said property shall be repaired, rebuilt, or replaced, including but not limited to the quality of materials, workmanship and design, but not to exceed the cost to restore the property to the condition that existed prior to the loss using materials, workmanship and design of like kind and quality without deduction for depreciation, obsolescence, or condition.

Esthetic Quality as used herein shall mean the economic value that the property has to the Insured in respects to the attractiveness of the property relative to maintaining its level of business.

j)     Plants, trees, shrubs and lawns, whether located on or off a golf course, at the replacement cost of comparable and like kind and quality available nursery stock for plants, trees, shrubs and lawns determined to be a total loss. For plants, trees, shrubs and lawns determined to be damaged but not a total loss, this company shall be liable for reasonable future care and maintenance of damaged plants, trees, shrubs and lawns for a period not to exceed two years from the date of loss. Care and maintenance will include but not be limited to pruning, trimming, fertilization and insect control.

k)     Property of Others and property leased by the Insured, or for which the Insured has agreed to insure, at the Insured's option either:

      i)        The replacement cost new or;

      ii)       The amount stipulated in the lease agreement or;

      iii)      Insured's contractual or legal liability

l)     It is understood that following an insured loss the Insured may use its personnel to assist in the repair, replacement, and/or restoration of the lost or damaged property; and/or to make temporary repairs, and/or to expedite the repair or replacement of the damaged property, and/or to remove debris, and/or demolition, and/or clean up.

It is expressly agreed that in the event of any covered loss under this Policy, the Company shall reimburse the Insured for such expenses incurred by the Insured in utilizing its employees, both hourly and/or salaried, in the performance of the above said damage related repair expenses.

Such charges shall be calculated in accordance with the Insured's current payroll and/or salary payment practices, including, any payroll related expenses. Any amounts paid hereunder in respect to the application of this provision shall be deducted from the amount that may otherwise be payable under the Business Interruption and/or Extra Expense coverage of this policy.

m)     Other property not otherwise provided for; at replacement cost new without deduction for depreciation. If the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value of the property damaged or destroyed. The Insured may elect not to replace the real and/or personal property lost, damaged or destroyed and obtain loss settlement on a replacement cost new basis if the proceeds of such loss settlement are expended in other capital expenditures related to the Insured's operations. Loss settlement on a replacement cost basis shall include Architect and Engineering Fees to the extent incurred as a result of a loss which would be payable under this policy

n)     Other Land Improvements at the actual costs incurred to reclaim, restore, replace, and/or repair Other Land Improvements as defined herein, including, grading, excavating, landfill, earth moving expenses, and/or costs of soil, stone, and/or other materials needed to support such reclamation, restoration, replacement, or repair, and including demolition

9

Resort Hotel Association Property Policy – February 28, 2012

and increased cost of construction. Not to exceed stated values on file with he Resort Hotel Association.

o)   Beach Improvements, other than plants, trees, shrubs, and lawns, at the actual costs incurred to reclaim, restore, replace, and/or repair such Beach Improvements, including grading excavating, landfill, earth moving expenses, and/or costs of soil, stone, and/or other materials needed to support such reclamation, restoration, replacement, or repair, and including demolition and increased cost of construction.

p)   Wine Inventory: The lesser of replacement cost or selling price at time of loss. If selling price at time of loss is not documented, then Fair Market Value above any applicable deductible, meaning the dollar amount, at the time of the covered loss, that it would cost to replace the property (wine) with another similar age, quality, origin, appearance and condition within a reasonable length of time in an appropriate and relevant market.

It is understood and agreed that as respects replacement cost new, the insured shall have the option of replacing equipment having technological advantages and/or representing an improvement in function and/or forming part of program of system enhancement provided that such replacement can be accomplished without increasing the insurers liability

This Company's liability for loss or damage on a replacement cost basis shall not exceed the lesser of the replacement cost new of the property or any part thereof identical with such property intended for the same occupancy and use, including normal and customary profit and overhead even if the work is performed by the insured; or the amount actually and necessarily expended in repairing or replacing said property or any part thereof including normal and customary profit and overhead even if the work is performed by the insured.

As respects 11.a., 11.b.,11g, 11.j., 11.m and 11.n.,  the insured may elect not to replace the real and/or personal property lost, damaged, or destroyed and obtain loss settlement on a replacement cost basis if the proceeds of such loss settlement are expended in other capital expenditures related to the insured's operations.

Permission is granted for the insured to replace the property with similar property at the same or another site within the territorial limits of the policy, but recovery is limited to what it would cost to replace on same site.

12.   BUSINESS INTERRUPTION

a)   Loss due to the necessary interruption of business conducted by the insured, including all interdependencies between or among companies owned or operated by the insured resulting from loss or damage insured herein and occurring during the term of this policy to real and/or personal property described in Clause 8.

b)   Such loss shall be adjusted on the basis of the actual loss sustained by the insured, consisting of the net profit which is prevented from being earned;

and

c)   all charges and other expenses (including ordinary payroll, payroll, and soft costs) to the extent that these must necessarily continue during the interruption of business, but only to the extent to which such charges and expenses would have been incurred had no loss occurred.

d)   In determining the amount of net profit, all charges, and other expenses (including Soft Costs) hereunder for the purposes of ascertaining the amount of the actual loss sustained, due consideration shall be given to the experience of the business before the date of the loss or damage and to the probable experience thereafter had no loss occurred.

10

e)   In the event of insured loss or damage to property as described in Clause 8. which results in an interruption of research and development activities, which in themselves would not have produced income during the recovery period, this policy shall insure the actual loss sustained of the continuing charges and expenses, including ordinary payroll (*unless otherwise excluded on the Named Insured Endorsement*) and payroll, directly attributable to such research and development activities.

13.   **EXTRA EXPENSE**

This policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein.

a)   The term "Extra Expense" wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred, including soft costs.

b)   In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined above in Clause 13 a) directly attributable to the interruption of such research and development activities.

c)   As soon as practicable the Insured shall resume normal operations of the business and shall dispense with such extra expense.

14.   **EXPENSE TO REDUCE LOSS**

This policy is extended to cover expenses as are necessarily incurred for the purpose of reducing any loss under this policy.

15.   **SOFT COSTS**

This policy shall cover soft costs, as hereinafter defined, incurred by the Insured caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to property as covered herein.

a)   The term "Soft Costs" is defined as those expenses related to the delay of completion of a project over and above those costs which would have been incurred, including but not limited to:

   i)   Additional interest costs on money used to finance construction or repair;

   ii)   Additional real estate and property taxes incurred for the period of time that construction extends beyond the projected completion date;

   iii)   Additional legal and accounting fees; and

   iv)   Additional advertising and promotional expenses, which become necessary as a result of an insured loss.

b)   This company shall pay soft costs incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed.  As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

   i)   partial or complete resumption of construction, business or operations;

Resort Hotel Association Property Policy – February 28, 2012

    ii)       making use of materials, equipment, supplies, or other property at the insured's premises or elsewhere; or

    iii)      making use of substitute facilities or services where practical;

    such reduction will be taken into account in arriving at the amount of such loss.

c)    This policy insures the interest expense necessarily incurred by the insured in effecting repairs to the damaged property, from the date of the insured's payment to others until payment of the loss by the insurer. The prime-lending rate of the insured's bank will apply.

## 16.    RENTAL VALUE/RENTAL INCOME

This policy provides coverage for Loss of Rental Income and/or Loss of Rental Value of the insured caused by loss or damage insured herein occurring during the term of this policy to property and/or premises rented, leased or occupied by the insured and/or rented or leased by the insured to others.

Rental Income shall include the following:

    a.    The total anticipated gross rental income from tenant(s) of the insured's building(s) and structure(s), and

    b.    The amount of all charges assumed by tenant(s) except those charges which do not continue, which would otherwise be obligations of the insured, and

    c.    (The fair rental reasonably expected from unrented portions of such property and the fair rental for that portion occupied by the insured.

Rental Value shall include the following:

    a.    Rental Income Insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.

    b.    Rental expenses incurred by the insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by loss or damage insured herein. Such coverage will apply for all additional expenses incurred during the period of un-tenant ability or if the lease cannot be terminated until its expiration.

Experience of the Business:

    a.    In determining the amount of rental value and/or rental income covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred to above said property.

    b.    With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation, or assembly.

12

Resort Hotel Association Property Policy – February 28, 2012

Period of Restoration:

The length of time for which a loss may be claimed under this provision shall be in accordance with the loss provisions applicable under the Period of Restoration.

17.   **ROYALTIES**

This policy shall cover the loss of income to the insured under royalty, licensing fees, or commission agreements between the insured and another party which is not realizable due to loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

a) Any loss hereunder shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED to such income referred to above, which would have been earned had no loss occurred.

b) Resumption of Operations: The insured shall influence, to the extent possible, the party with whom the agreement described above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

c) Experience of the Business: In determining the amount of income derived from the agreements(s) described above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

18.   **LEASEHOLD INTEREST**

1.   This policy provides coverage for the leasehold interest of the insured.

Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the insured's interest in:

i.   The amount of bonus paid by the insured for the acquisition of the lease not recoverable under the terms of the lease;

ii.   Improvements and betterments to real property which are not covered under any other section of this policy;

iii.   The amount of advance rental paid by the insured and not recoverable under the terms of the lease;

when property is rendered wholly or partially un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured under this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

2.   "The Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

13