IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

GREENBRIER HOTEL CORPORATION, et al.,

        Plaintiffs,

v.                                        CIVIL ACTION NO.   5:14-cv-15201

LEXINGTON INSURANCE COMPANY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion of Defendants Lexington Insurance Company, XL Insurance America, Inc., Ace American Insurance Company, and Underwriters at Lloyd's London to Dismiss, or Stay, this Litigation and Compel Appraisal* (Document 12) and attached exhibits, the *Memorandum of Law in Support* (Document 13) and attached exhibits, the Plaintiffs' *Memorandum in Opposition to the Motion by Defendants to Dismiss, or Stay, This Litigation and Compel Appraisal* (Document 65) and attached exhibits, and the *Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, or Stay, this Litigation and Compel Appraisal* (Document 68) and attached exhibits.  For the reasons stated herein, the Court finds that the Defendants' motion must be granted.

        **I.**        **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    *A.  Procedural History*

Plaintiffs Greenbrier Hotel Corporation, The Greenbrier Sporting Club, Inc., (collectively, "the Greenbrier"), and The Greenbrier Sporting Club Development Company, Inc., initiated this

action with a *Complaint* (Document 1-1) filed in the Circuit Court of Greenbrier County, West Virginia, on March 14, 2014. The Defendants are Lexington Insurance Company (Lexington), XL Insurance America, Inc. (XL), ACE American Insurance Company (ACE), The Underwriters at Lloyd's London (Lloyd's), McLarens Young International, Inc. (McLaren's), and Rocco M. Bianchi.[1] The Defendants removed this case to federal court on April 23, 2014, and filed their motion to dismiss or stay on April 30, 2014. The Court granted the Plaintiffs' request to defer consideration of that motion pending the timely filing of a motion to remand. (Document 18). Thereafter, the Plaintiffs filed a notice indicating that they would not seek remand and agreeing that the Greenbrier Sporting Club Development Company, a Delaware corporation, is not entitled to damages, resulting in complete diversity between the parties. (Not. & Mot., Document 22).

At the same time, the Plaintiff sought to convert the Defendants' motion to dismiss or stay into a motion for summary judgment due to the extensive evidentiary materials involved in the issue presented. (Not. & Mot. at 2–3.) The Court ordered that the Defendants' motion be so converted and set deadlines for discovery relevant to the question presented therein. (Order, Document 25).

B. *Alleged Losses*

This case involves a dispute over insurance for losses allegedly suffered by the Greenbrier following the *derecho* windstorm of June 29, 2012.[2] The Greenbrier was scheduled to host its Greenbrier Classic golf tournament three days later. The tournament went forward, but the

---

1 The Court will refer to the insurance companies collectively as "Insurers."
2 According to the National Weather Service, "a 'derecho' is a long-lived, rapidly moving line of intense thunderstorms that produces widespread damaging winds in a nearly continuous swath." *The Derecho of June 29, 2012*, National weather Service, *available at* http://www.weather.gov/lwx/20120629svrwx (last updated July 27, 2012.)

Greenbrier asserts that it suffered losses including physical damages to the hotel and facilities, extra work needed to prepare the golf course and facilities, extra salaries, wages, and fringe benefits, adverse publicity, and additional advertising and promotion expenses. The dispute currently centers on a business interruption claim. The Greenbrier's insurance policies were purchased through the Resort Hotel Association (RHA) and are largely identical. McLaren's is contracted to act as a claims adjuster for the RHA policies, and Mr. Bianchi was assigned to the Greenbrier's claims. The Plaintiffs assert that the Defendant Insurers paid "a small portion" of their losses, but refused to pay the remainder. (Compl. at ¶ 24.) The Plaintiffs assert claims for breach of the insurance contract, declaratory relief and unfair and unlawful claims practices.

*C. The Insurance Policies*

The Defendants contend that the insurance policies at issue contain provisions permitting either party to demand appraisal if the amount of the loss is contested. (Mot. at ¶ 1.) In Count II of their complaint, the Plaintiffs seek "declaratory relief in the nature of a determination that the plaintiffs need not proceed with appraisal under the Policy." (Compl. at ¶ 34.) They assert that the Defendants did not invoke the appraisal provision within sixty (60) days after the receipt of the proof of loss, and therefore, waived their right to appraisal. (*Id.* at ¶ 33.) The parties dispute the applicability of the appraisal provisions and the meaning of "proof of loss."

Each insurance policy at issue contains a provision permitting either party to make a written demand for appraisal if there is disagreement as to the amount of loss. The Lexington, XL, and Lloyds policies all contain identical language: "If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a

3

competent and disinterested appraiser." (Lexington Policy 00040, ¶ 51, att'd to Def.'s Mot. as Ex. A) (Document 12-2); (XL Policy 00044, ¶ 51, att'd to Def's Mot. as Ex. B) (Document 12-3); (Lloyd's Policy, ASCOT 00038–39, ¶ 51, att'd to Def's Mot. as Ex. D) (Document 12-5.) The ACE policy contains an endorsement changing the relevant appraisal provision to exclude the sixty-day time period. It instead reads: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand." (ACE Policy 00126, att'd to Def's Mot. as Ex. C) (Document 12-4).

The proof of loss provision applicable in each policy provides:

Proof of loss is required as soon as practicable following the Company's written request for signed Proof from Insured; however, Insured, at its option, may elect to file Proof with Company prior to Company's request. It shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage, or expense sustained.

(*See, e.g.* Lloyd's Policy at ¶ 46.)[3] Prior to a proof of loss, the Greenbrier was to provide "notice of loss." The relevant provision requires that notice be given "[a]s soon as practicable after any loss or damage occurring under this policy." (*See, e.g.*, ACE Policy, 00032, ¶ 44.) The insured is instructed to "report such loss or damage with full particulars" to a specified address. (*Id.*)

---

3 The Lexington Policy also contains the following "Proof of Loss and Payment" paragraph in a section entitled "Standard Property Conditions:"
> The Insured shall complete and sign a sworn proof of loss within ninety (90) days after the occurrence of a loss (unless such period be extended by the written agreement of the Company) stating the time, place and cause of loss, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, and all other insurance thereon. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss…

(Lexington Policy, 0006.)

4

*D. The Claims Process*

The Plaintiffs provided a series of documents asserting business interruption losses to the Insurers. The Greenbrier hired RWH Myers to generate the claim submission, and the Insurers retained Meaden & Moore, an accounting firm, to assist in reviewing the claim. An initial interim claim for the period between the storm on June 29, 2012, and December 2012 was submitted on January 30, 2013. (Jan. 30, 2013 Claim, att'd to Pl.'s Resp. as Ex. 9) (Document 65-10.) A subsequent interim submission for the date of the storm through March 2013 was submitted on May 13, 2013. (May 13, 2013 Claim, att'd to Pl.'s Resp. as Ex. 10) (Document 65-13.) Each submission contained schedules detailing the asserted losses, along with some documentation. The Insurers responded with requests for further documentation, a process that continued through late 2013. Representatives from the Greenbrier, RWH Myers, McLarens, Meaden & Moore, and the Insurers gathered at the Greenbrier the week of November 11, 2013, for further review of documents.

The Greenbrier demanded that the claims be resolved by the end of the year. Another meeting was held on December 20, 2013. At that meeting, the Insurers provided a report from Meaden & Moore detailing their position that no covered business interruption losses occurred after July 9, 2012. (Meaden & Moore Preliminary Claim Analysis, p. 2, att'd as Ex. 11 to Pl's Resp.) (Document 65-16.) The report summary identifies the total amount claimed as $17,471,025, and lists the substantiated loss found by Meaden & Moore as $798,116. (*Id.*)

The record includes one-page forms entitled "Sworn Statement in Proof of Loss," relevant to the resolved property damage claims. These documents include the date of the storm, partial loss statements, and the percentage to be paid by the individual insurance companies. (*E.g.*,

5

Proofs of Loss, att'd to Def.'s Mot as Ex. G) (Document 12-15.) The notarized forms are signed by representatives from the RHA, and dated the 30th of November, 2012, and the 6th of December, 2012. Later proofs of loss for the business interruption claim, titled "Sworn Statement in Partial Proof of Loss," dated January 2, 2014 and January 6, 2014, include similar information regarding the date and cause of the loss, the claimed loss, and the percentage to be paid by the individual insurance companies. (Proofs of Loss, att'd to Def.s Mot. as Exhibit Q) (Document 12-25.) These documents reference the amount in dispute, and are again signed by an RHA representative and notarized.

The insurance companies demanded appraisal on February 24, 2014, citing the dispute regarding the amount of loss. (Feb. 24, 2014 Letter, Bianchi to Miller, att'd as Ex. R. to Def.'s Mot.) (Document 12-26.) The Greenbrier replied with a letter stating its position that the insurers had waived their right to appraisal because the claim had been pending for eighteen (18) months. (March 13, 2014 Letter, Miller to Bianchi, att'd as Ex. S to Def.'s Mot.) (Document 12-27.)

## II. STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning

a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be

7

granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

### III. DISCUSSION

*A. The Parties' Arguments*

The Insurers request that this case be dismissed or stayed pending appraisal. They state that their written appraisal demand was made within sixty days of the Greenbrier's submission of the proofs of loss, as prescribed by the policy. In addition, they point out that the ACE policy endorsement eliminated the sixty day deadline for requesting appraisal after submission of proof of loss. They further urge the Court to recognize a policy preference favoring appraisal in insurance disputes. Though such a policy preference is absent from West Virginia case law, they rely on New York cases, arguing that because "the West Virginia legislature has adopted the New York standard fire policy's appraisal clause, New York's approach to that clause is also germane." (Pls.' Mem. at 10.) They deny that they waived appraisal, and assert that the Greenbrier failed to meet its burden of demonstrating an intentional waiver of appraisal rights.

The Greenbrier responds that the Court should use the plain meaning of "proof of loss" to determine when the sixty-day period for appraisal demands began, rather than the single-page "Sworn Statement in Proof of Loss" forms generated by the Insurers. The Greenbrier asserts that the claim submissions documenting the business interruption and extra expense claims, submitted on January 30-31, 2013 and on May 13, 2013, constitute proofs of loss in the general sense.[4]

---

4 The Greenbrier cites the definition of proof of loss contained in Black's Law Dictionary, which is consistent with West Virginia case law:
    A formal statement made by the policy-owner to the insurer regarding a loss, intended to give
    insurer enough information to enable it to determine the extent of its liability under a policy or bond.
(*See* Pls.' Resp. at 11, citing *Black's Law Dictionary* 1251 (8th ed. 2004.))

Thus, it argues, the impasse with respect to the business interruption loss "existed as of no later than March of 2013, November 2013, and on December 20, 2013." (Pls.' Resp. at 6.) The Greenbrier stresses that the "Sworn Statement in Proof of Loss" forms merely "memorialized the specific amount that each insurer had decided to disburse," and were forwarded to RHA for signatures, not to the Greenbrier. (*Id.* at 15.) Using forms generated at the end of the adjustment process to start the clock for appraisal demands, the Greenbrier argues, would be nonsensical. Finally, the Greenbrier cites the long-standing rule that any ambiguity in an insurance policy must be construed in favor of the insured.

The Insurers reply that "the 2013 Submissions were incomplete, were subject to revision, and did not provide the entire claim being made by the Hotel," and, further, were not signed and sworn as required by the policies. (Reply at 1.) Put simply, they argue that those submissions were not proofs of loss. Because they sought additional information and documentation after receiving the claims submissions—and often waited several weeks or months to receive the requested information—they claim that those submissions lacked information essential to liability determination.[5] The Insurers assert that the Greenbrier has not met its burden of proving implied waiver by clear and convincing evidence, as is required for demonstrating waiver of rights in other contexts. They cite witness testimony indicating that neither the Greenbrier's claims consultant nor the Insurer's adjuster and accountants distinguished between the claim submissions and the proof of loss forms. Finally, they again point out that the ACE policy does not include the sixty day time limit for demanding appraisal, a point the Greenbrier failed to address in its response.

---

5 Indeed, the Insurers contend that some necessary information has yet to be provided.

9

*B. Applicable Law*

In West Virginia, courts "accord the language of an insurance policy its common and customary meaning." *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 693 S.E.2d 53, 57-58 (W.Va. 2010). If, after giving the language its customary meaning, the provisions in an insurance policy "are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syl. pt. 1, *Kelly v. Painter*, 504 S.E.2d 171, 172 (W.Va. 1998). Courts are to determine whether a contract is ambiguous as a question of law. Syl. pt. 4, *Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 897 (W.Va. 2009) (noting that "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous"). Courts must give full effect to the plain meaning of clear and unambiguous insurance policy contract provisions. *Id.*, Syl. pt. 2. If, however, a provision is ambiguous, courts are to construe it "against the drafter, especially when dealing with exceptions and words of limitation." *Boggs*, 693 S.E.2d at 58 (internal quotation marks and citations omitted).

Like other aspects of insurance policies, "[t]he proof of loss condition is to be liberally construed in favor of the insured." *Petrice v. Fed. Kemper Ins. Co.*, 260 S.E.2d 276, 278 (W.Va. 1979). The West Virginia Supreme Court has explained:

> A condition in an insurance policy requiring the filing of a written proof of claim is for the benefit of the insurer, its purpose being to furnish notice to the insurer of the occurrence of a loss so that it may be afforded an opportunity to make proper investigation and take such action as it may deem necessary to determine its liability and otherwise protect its interests.

Syl. pt. 1, *Willey v. Travelers Indem. Co.*, 193 S.E.2d 555, 556 (W.Va. 1972); *see also Petrice*, 260 S.E. 2d at 278. Furthermore, the proof of loss "may be waived or the insurer by its conduct may

10

be estopped from asserting the failure to supply it to effect a forfeiture. If the need for the proof of claim is obviated by the action of the insurer, the failure to furnish it by the insured may be excused." *Willey*, 193 S.E.2d at 558. "A substantial compliance with the provision requiring a sworn proof of loss, resulting in the insurer being able to adequately investigate the claim and estimate its liabilities, is all that is required." *Petrice*, 260 S.E.2d at 278.

### C. The Policies

This case is muddled by the fact that the four policies are largely identical, and coverage is combined under the policies, but both the Lexington and the ACE policies contain different language with respect to the relevant proof of loss and appraisal provisions. The Lexington policy contains a proof of loss provision that requires the Insured to complete a sworn proof of loss within ninety days of the occurrence, but also contains a conflicting proof of loss provision in Paragraph 46 requiring proof of loss only following the Insurer's written request. (Lexington Policy, 0006, 00039.) The ACE policy contains an endorsement altering the appraisal provision to eliminate the requirement that appraisal be demanded within sixty days after the filing of a proof of loss. (ACE Policy, 00148.) The Court will begin with consideration of the dispute regarding what constitutes a proof of loss before addressing the ACE policy.

As an initial matter, the Court is unconvinced by the Insurers' argument that New York's policy preference favoring appraisal is applicable in West Virginia. West Virginia courts have given no indication of such a preference. Thus, the Court will consider the issues presented in accordance with West Virginia law, including the guidance provided by West Virginia courts for consideration of insurance contracts. Accordingly, any ambiguity must be construed in favor of the insured.

11

The Greenbrier's claims submissions permitted the Insurers to investigate the claim and estimate their liabilities, evidenced by the Meaden & Moore analysis prepared on December 17, 2013. Requesting additional information or documentation is part of investigating a claim that would naturally occur after submission of a proof of loss, as that term is used in West Virginia. The Insurers accepted the submissions and investigated the claims contained therein. Under applicable West Virginia case law, that serves to prevent any denial of coverage based on the failure to file a proof of loss in compliance with the policy terms.

However, the case law regarding proof of loss is of limited applicability here. The cases dealt with insurers attempting to deny coverage based on the insured's failure to meet the precise requirements for a proof of loss contained in the policies. Here, the issue is whether appraisal was demanded in accordance with the policies; proof of loss is implicated only because the appraisal provision of the Lloyd's, XL, and Lexington policies reference it. Under the policies, "notice of loss" starts the claims process. "Proof of loss" is required only upon request of the Insurer. Pursuant to the Lloyd's, XL, and Lexington policies, either party may demand appraisal within sixty days following the submission of a proof of loss. Proof of loss is described as a signed, sworn statement including "the place, time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage, or expense sustained." (Lexington Policy, 0039.)

The Court does not find the policy language ambiguous. Although the appraisal provision does not itself define proof of loss, the policies contain a paragraph setting forth the parameters for a proof of loss. The only documents in this case that meet the plainly-worded policy requirements are the "Sworn Statement in Proof of Loss" forms generated by the Insurers. Although the

12

submission of the claims schedules and other information substantially complied with proof of loss as that term is used in West Virginia, the Greenbrier's position that any one of several events could have triggered the appraisal clause is wholly impractical, both for the parties attempting to follow the policy provisions and for a court endeavoring to apply them.

The Greenbrier argues that it makes little sense to trigger the sixty day time to demand appraisal with forms generated only after the Insurers decide how much to pay. However, a dispute as to the amount of loss would arise only after the Insurers investigated the claim and came to a preliminary coverage position. The Greenbrier, of course, was free to file a document meeting the policy requirements for a proof of loss at an earlier date in order to trigger the start of the appraisal timeline. It did not do so. The Court must apply the unambiguous language of the contract. The motion to compel appraisal by Lexington, XL, and Lloyd's is, therefore, granted.

The ACE policy contains an endorsement altering the appraisal provision to eliminate a time limit. It simply provides that either party may demand appraisal in writing if there is disagreement as to the amount of loss. The Greenbrier did not address nor challenge this language in its response. The alteration is contained in an endorsement at the end of the policy. The main text of the policy still contains the same appraisal provision applicable in the Lloyd's, XL, and Lexington policies. Absent some argument from the Greenbrier challenging the application of the conflicting language, however, the Court must apply the language as contained in the policy. ACE demanded appraisal slightly over two months after the Insurers completed their investigation and the parties' respective positions were established. The demand came before the Greenbrier filed suit. Accordingly, the Court finds that ACE demanded appraisal in

13

compliance with the ACE policy terms. Therefore, its motion to compel appraisal is granted. The Court finds it appropriate to stay this matter pending appraisal.

## CONCLUSION

WHEREFORE, after careful consideration and based upon the findings contained herein, the Court does hereby **ORDER** that the *Motion of Defendants Lexington Insurance Company, XL Insurance America, Inc., Ace American Insurance Company, and Underwriters at Lloyd's London to Dismiss, or Stay, this Litigation and Compel Appraisal* (Document 12) be **GRANTED** and that this matter be **STAYED** pending the appraisal. The parties are **ORDERED** to submit a status report every thirty (30) days and immediately notify the Court upon completion of the appraisal process.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 18, 2015

*signature*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA