# EXHIBIT A

IN THE CIRCUIT COURT OF GREENBRIER COUNTY, WEST VIRGINIA

GREENBRIER HOTEL CORPORATION,
a West Virginia corporation; THE
GREENBRIER SPORTING CLUB, INC., a
West Virginia corporation; and THE
GREENBRIER SPORTING CLUB
DEVELOPMENT COMPANY, INC., a
Delaware corporation,

                 Plaintiffs,

v.

                                         Civil Action No. 14-C-44

LEXINGTON INSURANCE COMPANY, a
Massachusetts corporation; XL INSURANCE
AMERICA, INC., a Delaware corporation;
ACE AMERICAN INSURANCE
COMPANY, a Pennsylvania corporation;
ALLIED WORLD ASSURANCE
COMPANY HOLDINGS, AG, a foreign
corporation; ALLIED WORLD
ASSURANCE COMPANY, LTD, a
foreign corporation; ALLIED WORLD
ASSURANCE COMPANY (U.S.) INC.,
a Delaware corporation; THE
UNDERWRITERS AT LLOYD'S
LONDON, a foreign corporation;
MCLARENS YOUNG INTERNATIONAL,
INC., a Delaware corporation;
and ROCCO M. BIANCHI, Executive
General Adjuster for the insurance
carriers above, their agent, servant and
representative, and in his individual capacity
and as agent, servant and employee of
McLarens Young International, Inc.,

                 Defendants.

## AMENDED COMPLAINT

     The plaintiffs above-named bring this action against the defendants for breach of an

insurance contract, as more fully stated hereinafter.  The plaintiffs also request declaratory relief

pursuant to the West Virginia Declaratory Judgments Act, W.Va. Code §55-13-1 *et. seq.*, a jury trial of all claims, and pursuant to Rule 57, W.Va.R.Civ.P., plaintiffs request that the Court grant a speedy hearing and advance the matter on the Court's calendar. Plaintiffs also assert claims for unfair and unlawful claims handling, all as more fully detailed hereinbelow.

1.      The plaintiffs are:

(a)      Greenbrier Hotel Corporation, which owns and operates an historic, world-renowned resort hotel located in Greenbrier County, West Virginia (the "Greenbrier"). The Greenbrier is a member of the Resort Hotel Association; and

(b)      The Greenbrier Sporting Club, Inc., a West Virginia corporation, and The Greenbrier Sporting Club Development Company, Inc., a Delaware corporation (collectively, the "Sporting Clubs"), own and/or operate recreational hunting, fishing and sporting clubs located in proximity to the Greenbrier.

(c)      All of the plaintiffs are referred to collectively as "plaintiffs."

2.      Among other things, the Greenbrier owns and operates several world class golf courses, which, since 2011, have been the site of a Professional Golf Association Tour golf tournament known as the Greenbrier Classic.

3.      The defendants are Lexington Insurance Company, a Massachusetts corporation ("Lexington"); XL Insurance America, Inc., a Delaware corporation ("XL Insurance"); Ace American Insurance Company, a Pennsylvania corporation ("Ace American"); Allied World Assurance Company Holdings, AG, a Switzerland corporation; Allied World Assurance Company, Ltd, a Bermuda corporation; and Allied World Assurance Company (U.S.) Inc., a Delaware corporation (collectively referred to as "Allied World"); The Underwriters at Lloyd's London, a British corporation ("the Underwriters"); and McLarens Young International, Inc.

2

("McLarens"), a Delaware corporation; and Rocco M. Bianchi ("Bianchi"), Executive General Adjuster for the insurance carriers above, their agent, servant and representative, and in his individual capacity and as agent, servant and employee of McLarens Young International, Inc. Each of the insurance company defendants is an "insurer" within the meaning of W.Va. Code §33-1-2. As such, each of the insurance company defendants all engage in the business of underwriting and issuing policies of insurance, including policies affording property insurance.

4.     At all times complained of herein, the defendants and each of them were acting as joint venturers in providing the insurance coverages identified herein and in adjusting and failing to adjust and pay for plaintiffs' losses.

5.     At all times complained of herein, defendant McLarens was and is a corporation which specializes in and is an adjusting company which advertises and holds itself out as an adjusting company for insurance companies like the defendant insurance carriers identified above. At all times complained of herein, defendant Bianchi was and is an insurance adjuster who is an employee of McLarens and was acting for and on behalf of McLarens in his individual capacity as well as an agent, servant and employee of McLarens.

6.     With respect to any and all claims made with respect to the liability of the defendants for plaintiffs' claims for loss, the defendants identified and named Rocco M. Bianchi of McLarens Young International, Inc. as a "Designated Loss Adjuster" to "adjust" the same.

7.     Defendants McLarens and Bianchi, as agent, servant and employee of the defendant insurance carriers and as their "Designated Loss Adjuster," acting on their own behalf and on behalf of the aforesaid carriers, were provided notice of the plaintiffs' losses and undertook the duty and responsibility to adjust the losses of plaintiffs as described below.

3

8.      McLarens and Bianchi owed a statutory and common law duty to plaintiffs to comply with the law of the State of West Virginia with respect to adjusting and resolving plaintiffs' losses for and on behalf of the aforesaid insurance carriers.

9.      On or about June 29, 2012, within a few days before the start of the 2012 Greenbrier Classic, a severe weather event described as a derecho and identified as "Cat. No. 83" with extremely high winds impacted a large part of the United States, including West Virginia and the Greenbrier and the Sporting Clubs.

10.     As a direct and proximate result of Cat. No. 83, widespread and severe physical damage was sustained by and to the property of the plaintiffs, the resort, the hotel, the Sporting Clubs' facilities and associated property, including but not limited to the real property, fixtures, trees and shrubbery, growing plants, golf courses, the grounds, buildings and out-buildings, landscaping, roads and roadways, trails, ponds, streams, bridges, and other environs and improvements located thereupon.

11.     In addition to the physical damages as aforesaid, the Greenbrier and the Sporting Clubs suffered a loss of electrical power, which, although ultimately restored, resulted in an interruption of all normal and ordinary business activities.

12.     As a further direct and proximate result of Cat. No. 83, the plaintiffs suffered an economic and financial loss due to the necessary interruption of its business, including but not limited to a period of interruption preceding the Greenbrier Classic. The loss resulting therefrom occurred not only during the period preceding the Greenbrier Classic, but also continued thereafter for an extended period of time. The business interruption and the ensuing loss associated therewith was a direct and proximate result of the effects of Cat. No. 83.

13.     The loss described hereinabove included, but was not limited to:

4

      (a)    A loss of profit which the plaintiffs were prevented from earning due to the interruption of its normal business; and

      (b)    Charges and expenses which necessarily continued despite the interruption of their businesses.

14.    As further direct and proximate result of Cat. No. 83, the plaintiffs were forced to incur extra expenses, meaning business expenses that would not normally have been incurred during the same time period, but were incurred because of the damage and interruption caused by Cat. No. 83.

15.    In addition to the damages and losses as aforesaid, the plaintiffs also expended substantial sums in an effort to reduce the amount of the losses resulting from Cat. No. 83, including but not limited to the following:

      (a)    Advertising expenses designed to mitigate the loss of revenue and profit caused by Cat. No. 83;

      (b)    Salaries, wages and fringe benefits that were necessarily paid to employees assigned to prepare and implement strategies to mitigate and offset the losses of revenue and profit caused by Cat. No. 83; and

      (c)    The cost of other promotional activities designed to mitigate and offset the losses caused by Cat. No. 83 and the ensuing damage and interruption of business.

16.    The Greenbrier is an "insured" under policies of property insurance issued by the defendants and each of them to the plaintiffs and any subsidiary, affiliated, associated or allied company, firm, organization of the plaintiffs as members and beneficiaries of the Resort Hotel Association (hereinafter referred to as the "Policy"). The "Named Insured" provision of the

5

aforesaid Policy includes as insured members of the Resort Hotel Association, such as The Greenbrier Hotel Corporation, and:

> ...any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, and the Insured's interest in partnerships and/or joint ventures, and/or any owned (wholly or partially) or controlled company(ies) where the Insured maintains an interest as now or hereinafter constituted or acquired; and any other party or interest for which the Insured has assumed the responsibility of purchasing insurance and Resort/Hotel Owners and other interested parties are endorsed herein as their interest may appear.

*See,* Policy, ¶1.  This action is brought for and on behalf of all of the above-described insureds, whether or not they are named herein as a plaintiff.

17.     The Policy covers a period from February 28, 2012 through March 8, 2013, and was in full force and effect when Cat. No. 83 occurred on June 29, 2012.  A true and correct copy of the Policy provided to plaintiffs as being the true Policy, that being the copy issued by Lexington, is attached hereto as Exhibit "A."  XL Insurance, Ace American, Allied World and the Underwriters issued identical policies, or following form policies that incorporate the provisions of Exhibit "A" and are bound to the terms and provisions the same as Lexington.

18.     The Policy provides property insurance coverage for loss due to direct physical loss or damage to covered property, which includes the Greenbrier and the Sporting Clubs' facilities, its real estate, golf courses, grounds, buildings, out-buildings, landscaping, roads, roadways, trails, ponds, streams, and all of its environs and improvements located thereon.

19.     A weather event, such as Cat. No. 83, and the ensuing loss and damage resulting therefrom, is a peril covered by the Policy.

20.     The Policy provides coverage for "Business Interruption" which means financial or economic loss "...due to the necessary interruption of business conducted by the Insured...." *See,* Policy, ¶12.

21.    The Policy provides coverage for "Extra Expense" which is defined and described in the Policy to mean "The excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the insured's business, over and above the total cost(s) that would have normally have (sic) been incurred to conduct the business during the same period had no loss or damage [due to a covered peril] occurred...." *See*, Policy, ¶13.

22.    The Policy provides coverage for "Expense To Reduce Loss" which includes "...expenses as are necessarily incurred for the purpose of reducing any loss under this policy." *See*, Policy, ¶14. The Policy also provides coverage for "Loss Adjustment Expenses" which includes "...expenses incurred by the Insured for preparing and certifying details of a claim...." *See*, Policy, ¶50.

23.    The Cat. No. 83 derecho struck the plaintiffs on the eve of preparation of the above mentioned PGA event, after the participants, like Tiger Woods and other world-renowned golfers, were booked to participate in the event, after advertisements of the event had occurred for a year, television contracts for coverage of the event were purchased, guests from around the country had booked their reservations, performers for concerts were booked, and all arrangements for the event had been made. This event was instituted to improve public interest and recognition of The Greenbrier Hotel and to restore its significance and relevance to the world as a destination resort hotel in West Virginia. The cost of sponsoring and paying for this event approximated $24 million, and the cancellation of this event would have devastated the plaintiffs. The cost would have crippled the plaintiffs financially and caused large, long term permanent damage from lost revenue, reputation as a destination resort, and would have caused permanent loss, particularly since the PGA tournament event was only recently started at The Greenbrier.

7

24.     Only three days before the event was to begin, the storm struck, destroying the golf courses which had already been perfectly prepared, knocked out power supply and inflicted the damage indicated above, and plaintiffs were faced with not only the physical damage but also the notoriety of the storm's devastation at the plaintiffs' hotel and facilities, which deterred guests from attending the event.  Plaintiffs were therefore faced with having to refund moneys and attempting to encourage their guests to attend regardless of the storm.

25.     Through extraordinary efforts, participation and expenditures of significant moneys, plaintiffs were able to go forward with the PGA tournament and some other events associated therewith but they sustained large damages, lost revenue, incurred extraordinary expenses, and both past and future business interruption losses.

26.     Plaintiffs purchased the insurance policy for the purpose of protecting the plaintiffs' businesses from economic damage to its businesses, such as was sustained herein.

27.     The plaintiffs gave defendants notice of the loss resulting from Cat. No. 83 as soon as practicable, as required under Paragraph 44 of the Policy.

28.     During 2012 and extending several months into 2013, the Greenbrier and the Sporting Clubs, directly and by and through their agents, submitted to defendants proof of loss resulting from Cat. No. 83, including the specific amount of the loss, and full particulars supporting the loss, by providing such proof of loss to the defendant Designated Loss Adjuster identified in Paragraph 45 of the Policy.

29.     Prior to June, 2013, the defendants, by and through their Designated Loss Adjuster, McLarens and Bianchi paid a small portion of the aforesaid loss.  However, defendants and each of them have failed and refused to pay the remainder of the loss claimed by the plaintiffs.  By and through letters sent by the defendants' Designated Loss Adjuster dated June

8

13, 2013 and January 2, 2014, copies of which are attached hereto as Exhibits "B" and "C" respectively, defendants and each of them, acting for and on their own behalf and on behalf of each other, have declined to make payment of the loss in full.

30.     Pursuant to Paragraph 49 of the Policy, the defendants are obligated to pay claims "...no later than thirty (30) days after presentation of proofs of loss by the Insured or its appointed representative." As stated, the plaintiffs and their designated representatives provided proof of loss within the meaning of Paragraph 49 many months ago. Nonetheless, the defendants have failed to make payment of the claim in full as required under Paragraph 49 above-quoted.

### COUNT I – BREACH OF THE INSURANCE CONTRACT

31.     Paragraphs 1 through 30 above are incorporated herein by reference.

32.     The defendant insurance carriers and McLarens and Bianchi, acting for and on behalf of the insurance carriers, have failed to make payment or agree or recommend payment of the plaintiffs' property insurance claim within thirty (30) days after presentation of proof of loss, in breach of the provisions of the Policy.

33.     As a direct and proximate result of the defendants' breach of the insurance contract and the defendants' adjuster's failure to recommend said payment, the plaintiffs have suffered the following injuries and damages:

(a)     Plaintiffs have been deprived of proceeds of the Policy that are due and payable;

(b)     Plaintiffs have suffered economic loss as a consequence of the failure of the defendants to make timely and appropriate payment of the proceeds of the Policy;

(c)     Plaintiffs have suffered aggravation and inconvenience and damages associated therefrom by virtue of the failure of the defendants to make timely and appropriate payment of the proceeds of the Policy;

9

(d)     Plaintiffs have been forced to incur litigation costs and expenses, including attorneys' fees as a direct and proximate result of the defendants' failure to make timely and appropriate payment of this insurance claim; and

(e)     Plaintiffs have otherwise been damaged thereby.

34.     In addition, the plaintiffs have incurred expenses for preparing the claim within the meaning of Paragraph 50 of the Policy.

WHEREFORE, the plaintiffs demand judgment for compensatory damages against the defendants, and each of them, both jointly and severally, for all damages, losses, costs and expenses sustained by the plaintiffs by virtue of the defendants' breach of the insurance contract. In addition, if and to the extent that the evidence demonstrates that the defendants acted with intentional disregard of their duties and a high threshold of actual malice in refusing to pay the plaintiffs' property insurance claim, the plaintiffs also demand punitive damages against each defendant, jointly and severally, in an amount that is just and appropriate, a trial by jury, the costs and disbursements of this action, and for such other and further relief as the Court deems just and proper.

## COUNT II – DECLARATORY RELIEF

35.     Paragraphs 1 through 34 above are incorporated herein by reference.

36.     By virtue of a letter dated February 24, 2014, the defendants, by and through their Designated Loss Adjustor, made a demand for appraisal under the Policy.  A true and correct copy of the letter containing said demand is attached hereto as Exhibit "D".

37.     The appraisal provision in the Policy provides:

If the insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser.   The appraisers shall then select a competent and disinterested umpire.  If they should fail for 15 days to agree upon such umpire,

then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.  If the appraisers fail to agree, they shall submit their differences to the umpire.  An award in writing by any two shall determine the amount of loss.  The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.  (Emphasis added.)

*See,* Policy, ¶51.

38.     The defendants, including defendants' adjuster, attempt to invoke the appraisal provision more than 60 days after the receipt of the proof of loss.  The demand for appraisal is untimely under the Policy, and the defendants' right to appraisal has been waived.

39.     There exists, therefore, a justiciable controversy as to whether the defendants may assert that the appraisal policy is untimely under the terms of the policy.

40.     The untimely demand for an "appraisal" represents the defendants' and each of their recalcitrance and plan and design, acting by and through their agents, servants and employees, to delay payment of the actual losses incurred under the Policy of insurance, and for defendants to pay plaintiffs less than the amount of plaintiffs' losses covered under the Policy which demonstrates that the untimely demand is made in bad faith.

WHEREFORE, the plaintiffs demand declaratory relief in the nature of a determination that the plaintiffs need not proceed with appraisal under the Policy, for attorney fees and costs, and for such other and further relief as the Court deems just and proper.

## COUNT III – UNFAIR AND UNLAWFUL CLAIMS PRACTICES

41.     Paragraphs 1 through 40 above are incorporated herein by reference.

42.     The defendants knew and/or in the exercise of reasonable standards of claim handling should recognize that there are amounts due and payable under the Policy. Nonetheless, defendants, individually and/or by and through their Designated Loss Adjuster,

11

defendants McLarens and Bianchi, have stubbornly failed and refused to make payment of such amounts to the plaintiffs.

43.     Defendants and each of them, acting for and on their own behalf and on behalf of each other, have selectively gathered evidence and information that undermines the plaintiffs' claims, and they have ignored information that supports the plaintiffs' claims.

44.     Defendants have misinterpreted the evidence and information that has been made available in such a way as to minimize the plaintiffs' entitlement to proceeds of the Policy, and to support their refusal to pay the claim in full.

45.     Defendants have failed and refused to accord the rights of the plaintiffs' equal status with their own rights and interests in breach of the covenant of good faith and fair dealing that is implied in the Policy.

46.     The defendants acting directly, or by and through their Designated Loss Adjustor, defendants McLarens and Bianchi, have committed multiple violations of the West Virginia Unfair Claims Settlement Practices Act, W.Va. Code §33-11-4(9) and the regulations promulgated by the Insurance Commissioner in W.Va.C.S.R. 114-14-1.1 *et. seq.* including but not limited to the following:

(a)     Defendants and each of them have misrepresented or concealed, or failed to disclose pertinent policy provisions such as the provision extending coverage to "Expenses To Reduce Loss" set forth in Paragraph 14 of the Policy, in violation of W.Va. Code §33-11-4(9)(a) and W.Va.C.S.R. §114-14-4:01 and 4:02;

(b)     Defendants and each of them have repeatedly failed to acknowledge and act reasonably and promptly upon communications, in violation W.Va. Code §33-11-4(9)(b), and defendants have ignored the time periods specified in W.Va.C.S.R. §114-14-5:01 through 5:04;

12

(c)     Defendants and each of them have failed to adopt and implement reasonable standards for the investigation of plaintiffs' claims, in violation of W.Va. Code §33-11-4(9)(c), and their investigation has been manifestly unreasonable, partisan, biased and myopic, in violation of W.Va. Code §33-11-4(9)(d);

(d)     Defendants and each of them have obscured whether or not they are affording coverage or denying coverage for much of the plaintiffs' claims, in violation of W.Va. Code §33-11-4(9)(e);

(e)     Defendants and each of them have compelled plaintiffs to institute this action to recover amounts due under the Policy by repeatedly offering plaintiffs much less than plaintiffs are due and will ultimately recover under the Policy;

(f)     Defendants and each of them have delayed the investigation and/or payment of claims "...by requiring an insured...to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms," in violation of W.Va. Code §33-11-4(9)(l);

(g)     Defendants and each of them have failed to pay plaintiffs on their business interruption loss, extra expense and expense to reduce loss claims to influence plaintiffs to accept the amounts offered on the physical damage portion of the claim, in violation of W.Va. Code §33-11-4(9)(m); and

(h)     Defendants and each of them have denied or refused to pay a portion of the plaintiffs' claim under the "Business Interruption" coverage of the claim without a reasonable explanation, and defendants have failed to offer any explanation for refusing to pay under the "Expense To Reduce Loss" coverage, both of which violated W.Va. Code §33-11-4(9)(n).

13

47. Upon information and belief, defendants McLarens and Bianchi are not licensed in West Virginia to acts as adjusters in West Virginia.

48. In addition to the unfair and unlawful manner of the handling of plaintiffs' claims, defendants and each of them have deliberately administered and investigated the claim in West Virginia using the services of out-of-state adjusters and investigators, defendants McLarens and Bianchi, whom the plaintiffs believe not to be licensed as such in West Virginia, in violation of various provisions of West Virginia law. The failure to utilize West Virginia licensed adjusters and investigators may be directly and proximately causally related to the claim handling improprieties above-described.

49. As a consequence of the aforesaid acts and business practices, plaintiffs have suffered harm and injury.

50. As a proximate result of defendants' acts and omissions, your plaintiffs were damaged as set forth above.

51. The conduct, acts, or omissions of the defendants and each of them, individually and/or jointly, were extreme, careless, reckless, malicious, done in bad faith, and/or were willful and wanton so as to entitle the plaintiffs to an award of punitive damages.

WHEREFORE, plaintiffs demand judgment against defendants and each of them, both jointly and severally, for compensatory and/or punitive damages, prejudgment and post-judgment interest, attorneys' fees, the costs and disbursements of this action, a trial by jury and for such other and further relief as the Court deems just and proper.

14

GREENBRIER HOTEL CORPORATION,
a West Virginia corporation; THE
GREENBRIER SPORTING CLUB, INC., a
West Virginia corporation; and THE
GREENBRIER SPORTING CLUB
DEVELOPMENT COMPANY, INC., a
Delaware corporation,

By Counsel

Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301
(304) 342-3106

Avrum Levicoff
West Virginia State Bar No. 4549
Levicoff, Silko & Deemer, P.C.
Suite 1900 Centre City Tower
650 Smithfield Street
Pittsburgh, Pennsylvania  15222-3911
(412) 434-5200

Counsel for Plaintiffs
F:\5\932\p002.docx